McCALEB, Justice.
 

 At about 2:00 o’clock on the morning of March 16, 1948, appellants, two Negro men, broke into the residence of a lone, middle-aged (48) white widow woman located in the upper Metairie Ridge section of Jefferson Parish. They entered the bedroom in which the woman was sleeping where each proceeded to rape her, one of them holding her in submission while the other performed the act. After commission of the crime, the men rifled the bureau, chest of drawers and other furniture of money and jewelry, pulled the telephone off the wall and left the premises. Appellants were apprehended two or three days later and, in due course, they were indicted, tried and convicted of aggravated rape. Following the imposition of the death sentence, they prosecuted this appeal, depending upon thirty-three
 
 [1]
 
 bills of exception for a reversal of their conviction.
 

 During the pendency of the case here, the State moved to dismiss the appeal as to appellant, Ocie Jugger, alleging that he •escaped, on December 19, 1949, from the parish jail at Gretna, Louisiana, where he was incarcerated, and that he is still at large. The motion to dismiss is supported by an affidavit of the sheriff of the Parish of Jefferson, and the statements therein subscribed are not denied. Notwithstanding this, counsel for Jugger oppose the dismissal of his appeal on the ground that this Court is without jurisdiction to determine facts and that the case must be remanded for the admission of testimony in support of the motion.
 

 It is provided by Article 548 of the Code of Criminal Procedure that an appeal will be dismissed if the appellant is a fugitive from justice either on the return day or on the day fixed for the hearing. And it is settled that “if a person convicted of a criminal offense appeals and breaks jail and escapes, his appeal will be dismissed.” State v. Scruggs, 192 La. 297, 187 So. 673, citing State v. Butler, 132 La. 597, 61 So. 682; State v. Lacroute, 134 La. 3, 63 So. 603, and State v. Rogers, 150 La. 1080, 91 So. 518.
 

 It is also well established that, when the motion to dismiss is supported by an affidavit of the sheriff or other officer last having custody of the appellant that he is a fugitive, it will be accepted by this Court as sufficient proof of the statements contained therein if they are not denied. State v. Scruggs, State v. Butler, and State v. Lacroute, supra. ’
 

 
 *701
 
 The ruling in State v. Rogers, supra upon which counsel for Jugger relies, is in direct conflict with the other jurisprudence on the subject. We doubt the soundness of the conclusion there reached, as we perceive no good reason why the affidavit of the sheriff should not be accepted as proof of the fact that appellant is a fugitive, when the statements are not traversed. It was correctly observed in State v. Rogers that this Court does not have original jurisdiction, except in the determination of questions of fact affecting its appellate jurisdiction in cases pending before it, but it was erroneously concluded that the question, whether the appellant was a fugitive, was not a question of fact affecting the appellate jurisdiction of the Court. Obviously, this is a matter of fact upon which our jurisdiction depends — -for, if an appellant is a fugitive, we are without jurisdiction of the appeal. The case of State v. Farris, 146 La. 523, 83 So. 791, cited by the Court in State v. Rogers to buttress its ruling, was not apposite as, there, the remand of the case was for the purpose of taking testimony to settle a dispute respecting a matter occurring during the trial.
 

 The motion of the State is therefore sustained and the appeal is dismissed as to appellant Jugger.
 

 With regard to the appeal of Washington, we note at the outset that the most important question presented for review is the admissibility of two oral confessions which were given while appellant was in the custody of deputy sheriffs of Jefferson Parish and a written confession made while he was incarcerated in the Gretna jail.
 

 The record shows that Washington and Jugger made five oral confessions, the first three of which were excluded by the trial judge. The fourth and fifth oral statements, however, were admitted after the State had proved to the judge’s satisfaction, out of the presence of the jury in accordance with accepted procedure, that they were free and voluntary.
 

 In order that a proper understanding may be had of the complaints of counsel, a brief statement of the circumstances under which all the confessions were given is appropriate.
 

 After the commission of the deed for which they stand convicted, Washington and Jugger tried to pawn a watch, formerly belonging to the deceased husband of their victim, which they had stolen on the night of the crime. In pursuance of their purpose, they enlisted the aid of another Negro, Vincent North, who later became a witness for the State. On March 17, 1948, Washington sent North to a loan company with directions to pawn the watch for $10.-00. When the attempt was made, North was immediately apprehended by detectives of the New Orleans Police Department and taken to police headquarters where he was questioned and beaten (according to his testimony) by several detectives. That night he was turned over to Mr. John Stewart, a Deputy Sheriff of Jefferson Parish and
 
 *703
 
 placed in the jail of the Town of Harahan. The following day, upon information given by North, Washington and Jugger were arrested by Stewart. Jugger was taken to the Harahan jail, where North was incarcerated, and Washington was placed in the jail at Metairie. Later, on the same day, Stewart, accompanied by Mr. Sam Bonura, another Deputy Sheriff, took Washington on an automobile ride. While the automobile was stopped in front of the office of a doctor whom Stewart was visiting, Washington confessed the crime to Bonura after the latter had told him to “come clean and tell the truth” as it would be “better” for him. The confession was repeated by Washington to Stewart upon the return trip to Jefferson Parish, where Washington was placed in the Harahan jail in which North and Jugger were prisoners. This confession was excluded by the trial judge on objection of defense counsel.
 

 The second confession occurred on the following day, March 19, at the Harahan jail, according to the testimony of Stewart, after Washington (who was in the cell next to Jugger) informed Jugger that he had confessed and adjured Jugger to tell all. Stewart says that Jugger asked him ‘if I would promise that he would get a fair trial if he told his part, and I said I would” and then, he proceeded to make the same statement as Washington had previously made. He further states that his only promise to the men was that they would be taken to the Parish jail at Gretna and be given a fair trial. The judge sustained defense counsel’s objection to the introduction of this confession.
 

 The third confession was given on the following night, Saturday, March 20, by both men to two brothers-in-law (citizens of New Orleans) of the victim of the attack, who were accompanied to the Harahan jail by a New Orleans detective. Both of these gentlemen avouched that the statements of Washington and Jugger were voluntary in every respect and were not induced by promises, fear, threats or intimidation. One of the brothers-in-law stated, on cross-examination, that he was harboring a feeling of outrage but said that he was, at all times, calm and did nothing that could have been interpreted as a threat. The testimony of the men is fully corroborated by the detective who accompanied them to the jail and also by the local jailer. But, despite this strong evidence which was not denied by either Washington or Jugger, who did not see fit to testify when the foundation for the admission of the confessions was being laid,
 
 [2]
 
 the judge maintained the objection of defense counsel and refused to receive the confession in evidence.
 

 The fourth confession was given on the following day, Sunday, March 21, while Deputies Stewart and Bonura were driving
 
 *705
 
 Washington, Jugger and North from the Harahan jail to the parish jail at Gretna. En route, Stewart stopped the car at the •Owl Club, a Negro saloon in the vicinity of Jugger’s home, which was owned by James Lambert, a colored man, who was acquainted with Jugger and Washington and who stated that they had been drinking beer in his place the night of the commission of the crime. Upon reaching there, Stewart called Lambert and, when the latter appeared, Stewart said to Washington and Jugger “I want you to tell Jimmy just what happened * * * you can go ahead and tell him.” Whereupon, according to Lambert, Jackson (another colored man who was a bystander), Stewart, Bonura, and North, an oral confession was made by Washington and concurred in by Jugger. All of these witnesses asserted that ho promises, threats or other inducements were made and the judge ruled the confession admissible.
 

 The fifth confession was given under very similar circumstances. After leaving the Owl Club, Stewart stopped at another colored barroom, known as the Midway Beer Parlor, which is operated by a Negro named John Wilson, where Stewart alighted from the car and called to Wilson. When Wilson appeared, Stewart told Washington and Jugger to “tell this man what you have done,” and then walked away from the car. Wilson says that thereupon Jugger told him of the commission of the crime and that his statement was concurred in by Washington. All the witnesses, Wilson, Bonura and North, stated that no promise was given or threats made. This confession was ruled admissible by the judge.
 

 The sixth confession is a written one. It was made on the following Tuesday, March 23, at the Gretna jail to Assistant District Attorney Julian Samuel, in the presence of Deputy Sheriffs Stewart and Rhodes, Weyer, the jailer, and Casse, the stenographer of the Twenty-fourth Judicial District Court, who took down the statement in shorthand. After the transcription of this confession, it was signed about two months later by Washington and Jugger in the presence of Assistant District Attorney Frank E. Langridge, Rhodes, Weyer, and Case. All of these witnesses testified that the confession was made without any inducement whatever, and the judge admitted it in evidence.
 

 Counsel for Washington contend that the three confessions received in evidence (fourth, fifth and sixth) were inadmissible for two reasons : (1) that the circumstances surrounding the giving of the confessions exhibit that the State has not carried the burden of showing that the statements were freely and voluntarily made, and (2) that, inasmuch as Jugger and Washington had previously given three similar confessions which had been excluded, it is to be presumed that all subsequent statements were made under like improper influences in the absence of a showing that the previous duress had been dissipated. We shall
 
 *707
 
 discuss these contentions in their respective order.
 

 It is, of course, fundamental that no person under arrest shall be subjected to ill-treatment or improper influence designed to produce a confession of crime and that a confession may not be used against the accused in a criminal trial unless it it first shown to be free and voluntary. Article 1, section 11 of the Constitution of 1921. And Article 451 of the Code of Criminal Procedure provides that before a confession can be received in evidence “it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” This Court has been consistent in its rigid enforcement of the constitutional guarantee, so much so, that it has declared on numerous occasions that before a confession can be introduced in evidence it must be shown beyond a reasonable doubt that it was not secured by fear, threats, inducements or promises.
 
 [3]
 

 With these principles in mind, we investigate the contentions of counsel. The first proposition, that the circumstances attendant to the giving of the confessions disclose that they were not free and voluntary, is not meritorious.
 

 We can eliminate immediately from the discussion the objection to the last confession which was given to the Assistant District Attorney, reduced to writing and subsequently signed by Washington. All of the facts connected with this confession disclose that it was entirely free and voluntary, and Washington did not even take the witness stand out of the presence of the jury in an attempt to refute the very strong evidence adduced by the State.
 

 But his counsel insist that this is not true with respect to the oral confessions made by Washington and Jugger at the Owl Club and the Midway Cafe. They assert that these statements were inadmissible because they were made within forty-eight hours of the prisoners’ arrest and confinement in a remote city jail where they had been held incommunicado; that they had been previously promised protection by two deputy sheriffs in order to make them talk; that their fellow-prisoner, North, had been beaten, to their knowledge, while in police custody; that he was present in the automobile, at the time the confessions were given, with blood on his face as the result of the corporal punishment previously inflicted and that the confessions were obtained as 'a result of a command or directive by Deputy Sheriff Stewart to tell Lambert and Wilson “what you have done.”
 

 The argument is not impressive. In the first place, counsel’s statement of the conditions under which the confessions were given is not borne out entirely by the
 
 *709
 
 ■evidence. There is nothing to show that these men were on a starvation diet or that they were held incommunicado. Nor do we think that Stewart’s request for them to tell Lambert what they had done can be viewed as a command. It was not accompanied by any promise, inducement or threat. True, the men were handcuffed and the face of their fellow-prisoner had some blood on it, but this is not evidence from which an inference is to be drawn that their otherwise voluntary statements were probably involuntary. Indeed, the fact that the prisoners were brought before Lambert and Wilson, who were members of their own race, is at least a circumstance which tends to refute any suggestion of third degree methods. Lambert, Jackson and Wilson are all disinterested witnesses; they are not connected with the police and they state that no force or intimidation was used. Their evidence, which is corroborated by Stewart, Bonura and North, was a sufficient foundation for the introduction of these statements in evidence.
 

 But counsel nevertheless maintain that, since the trial judge excluded the first three oral statements, there was a presumption that, at the time the subsequent confessions were given, Washington was under the same influence which prompted him to speak initially and that the burden was on the State to prove that these influences had been removed before the subsequent statements were made. In support of the proposition, the cases of State v. Henry, 196 La.
 
 217,
 
 198 So. 910, and State v. Murphy, 154 La. 190, 97 So. 397, are cited. To these may be added State v. Wood, 122 La. 1014, 48 So. 438, 20 L.R.A.,N.S., 392; Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 LEd. 1481, and United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654.
 

 It is well recognized, as shown by the foregoing authorities, that a confession following shortly after a prior involuntary statement is presumed to be the fruit of the same inducement that prompted the first, unless conditions which produced the first confession have been removed. But this rule is inapplicable to the case at bar for a number of reasons. Imprimis, we are not so sure that the trial judge was correct in excluding the first two confessions of Washington and we are certain that he erred in not admitting the third confession, given by Washington and Jugger to the brothers-in-law of their victim, at the Harahan jail on Saturday night, March 20, 1948. However, if it be conceded that the first two confessions were inadmissible because the language of Deputy Sheriff Bonura addressed to Washington, that it would be better for him to “come clean and tell the truth,” was coercive or an indirect promise, State v. Ross, 212 La. 405, 31 So.2d 842, and that the words of Deputy Sheriff Stewart, that he would see that the men were put in the parish jail and given the protection of a fair trial, held out an inducement to speak, State v. Henry, supra, the confessions were inadmissible only because the State failed to prove to the satisfaction of the judge that they were not ob
 
 *711
 
 tained through undue influence or promises of reward and not because the judge found that the defendants confessed as the result of the enticement or duress of the officers.
 

 The doctrine upon which counsel depend is nothing more than a rule of common sense. But, if the reason for the rule is not present, it is not applicable. Hence, where, as in the case at bar, the prior confessions are rejected merely because the State has failed to establish affirmatively in accordance with our jurisprudence
 
 [4]
 
 that there was no promise or coercion to which the confessions might be attributed, there is no presumption that the subsequent statements, which are proved to be otherwise free and voluntary, were made by reason of a pre-existing coercion or promise. And this is particularly true in a case like this where appellant offered no testimony to show that the first three confessions were given by him as the result of the inducements of the deputy sheriffs. Of course, we do not mean by this that an accused is obliged to take the stand in order to show that a confession was involuntary. However, if the actions or language of the officers are not in themselves such as to make it apparent that the confessions were induced by reason thereof, no unfavorable inference results from a ruling excluding the prior confessions.
 

 We conclude that the judge did not err in his holding that the confessions were properly received in evidence. This brings us to a consideration of the other bills of exception relied on by appellant.
 

 Bills Nos. 1, 2 and 3 are interrelated and may be considered together. They are based upon the asserted error of the trial judge in overruling defense counsel’s objection to the commencement of the trial on the ground that, of the fifty names included on the jury panel, only eighteen appeared for service, the judge having previously excused the others for cause. Subsequently, when the jury panel was exhausted, counsel objected to the order of the court that the tales jury box be opened and summons issued and, again on the following day, made a similar objection.
 

 We find no merit in the bills. It is entirely within the discretion of the trial judge to excuse jurors of the regular venire for cause, Article 345, Code of Criminal Procedure, and, in the absence of a showing of fraud or collusion and material injury to the accused, the ruling of the judge on an objection to the panel will not be disturbed. Article 203, Code of Criminal Procedure;
 
 *713
 
 State v. Gould, 155 La. 639, 99 So. 490; State v. Dallao, 187 La. 392, 175 So. 4. Furthermore, since appellant did not exhaust all of his peremptory challenges, he does not show that he was forced to accept an obnoxious juror. Hence, he has not been prejudiced by the adverse rulings. State v. Farrer, 35 La.Ann. 315; State v. Messer, 194 La. 238, 193 So. 633.
 

 Bills of exception Nos. 6 and 7 were reserved to the overruling of objections to the admission in evidence of the watch and certain other jewelry which had been
 
 stolen from the
 
 victim’s residence at the time the rape was committed. These objections were properly overruled as it is well settled that evidence of a different crime from the one charged may be received when both offenses are ' closely linked and so as to form part of the res gestae. State v. Mulholland, 16 La.Ann. 376; State v. Donelon et al., 45 La.Ann. 744, 12 So. 922; State v. Leslie, 167 La. 967, 120 So. 614, and State v. Guillory, 201 La. 52, 9 So. 2d 450. In addition to the fact that the robbery was an integral part of the criminal acts of the accused, their possession of stolen property was relevant for the purpose of identifying them as the rapists. Compare State v. Sears, 1950, 217 La. 47, 46 So.2d 34.
 

 Bills of exception Nos. 8, 9 and 10 were taken when the judge permitted Deputy Sheriff Stewart to identify certain stolen jewelry found at Jugger’s home which he had discovered during a search without a warrant.
 

 Since the bills apply exclusively to Jugger, they cannot be considered in view of the dismissal of his appeal. Washington cannot complain as to the admission in evidence against him of any stolen property recovered as a result of an alleged unlawful search of the house of his accomplice.
 

 Bill of exception No. 11 was reserved when the judge permitted Stewart to retake the witness stand, after the close of the previous day’s proceedings, for the purpose of explaining certain errors in his prior testimony relating to the circumstances under which the second confessions of Washington and Jugger were given.
 

 This bill is barren of substance. It was perfectly proper for the judge to permit the witness to explain his previous testimony and we fail to discern how appellant could have been injured inasmuch as the judge refused to receive the confession in evidence;
 

 In laying the foundation for the admission of the oral confessions made by Jugger and Washington at the Owl Club, Deputy Sheriff Stewart testified that the statements were made in his presence and that they were free and voluntary but he could not repeat verbatim what the men had said. Later, when the confessions were offered in evidence before the jury, defense counsel objected on the ground that, since Stewart
 
 *715
 
 was unable to state everything that had been said, the confessions were inadmissible, in view of the provisions of Article 450 of the Code of Criminal Procedure that a confession must be submitted in entirety. Upon the objection being overruled, counsel reserved Bill No. 13.
 

 The objection was not well taken. While Stewart was unable to remember all that had been said, he was able to state the substance of the confession. This suffices and its admission in evidence was proper. State v. Desroches, 48 La.Ann. 428, 19 So. 250; State v. Kellogg, 104 La. 580, 29 So. 285, and State v. Gianfala, 113 La. 463, 37 So. 30. Moreover, in the instant case, the entire confession was placed before the jury, as Lambert, to whom the confession was given, testified as to all details of the statement and his version was corroborated by North, Jackson and Bonura.
 

 Bills of exception Nos. 15, 16 and 17 raise the same point of law and were taken under the following circumstances. When Deputy Sheriff Stewart was testifiying out of the presence of the jury with respect to the confession obtained at the Owl Club, he failed to mention that North was in the automobile, stating that only Jugger and Washington occupied the back seat. However, he later stated before the jury that North was occupying the back seat of the car with Jugger and Washington. When defense counsel began cross-examination,he asked Stewart whether he had not previously stated, out of the presence of the jury, that North was not in the car. Whereupon, the district attorney objected on the ground that the question of the admissibility of the confession was a matter of law for the determination of the judge out of the presence of the jury. The judge ■sustained this objection and later maintained two other similar objections by the district attorney. Counsel reserved bills and complain that this was error in that it deprived the defense of the right of impeaching the testimony of the witness.
 

 If the judge had ruled that counsel could not attack Stewart’s veracity by asking him whether he had not made statements, contradictory to his testimony on direct examination, the bills would be meritorious. However, the record, which shows the circumstances under which the bills were taken, makes it clear that the judge did not deprive counsel of the right of testing the credibility of the witness. He declared that counsel could not investigate any question, respecting the evidence taken out of the presence of the jury, pertaining to the admissibility of the confession but that counsel would be permitted to cross-examine the witness about any statements that he made out of the presence of the jury provided specific reference was not made to the fact that the testimony was given out of the presence of the jury. Thus, it is plain that counsel was not deprived of any right accorded to cross-examiners under the law and, while we do not know why the judge did not wish counsel to make ref
 
 *717
 
 erence to the fact that he was examining the witness on contradictory statements given out of the presence of the jury, we cannot perceive that any prejudice resulted from this limitation.
 

 After the State had rested its case, defense counsel offered to put Washington on the stand for the limited purpose of showing that the confessions, which had already been received in evidence, were given under duress. The district attorney objected to the placing of appellant on the stand for this restricted purpose and, upon the maintenance of this objection, defense counsel reserved bill of exceptions No. 31.
 

 The ruling was correct. It is the established jurisprudence that the proper time for determining whether a confession is free and voluntary is when the State is making out its case preparatory to offering it in evidence. State v. Lanthier, 201 La. 844, 10 So.2d 638, and State v. Thomas, 208 La. 548, 23 So.2d 212. The Court stated in State v. Lanthier that: “The admissibility of a confession is a question which the trial judge must decide and not the jury. Jurors pass upon the effect of the confession after it has been held by the trial judge to be admissible as a result of the State laying the proper foundation for the introduction thereof. State v. Collens, 37 La.Ann. 607; State v. Bessa et al., 115 La. 259, 38 So. 985; State v. Woods, 124 La. 738, 50 So. 671; State v. Chiasson, 174 La. 542, 141 So. 54.” [201 La. 844, 10 So. 2d 640]
 

 Hence, the limited offer of counsel, after the admissibility of the confession had already been determined and it had been introduced in evidence, was untimely and the objection of the State thereto was well founded — for, in taking the stand at this stage of the proceeding, appellant was subject to cross-examination upon the whole case, Article 376, Code of Criminal Procedure, as an accused, when he testifies in his own behalf, is like any other witness. Article 462, Code of Criminal Procedure.
 

 Bill No. 32 was reserved to the overruling of a motion for a new trial. All matters therein have already been covered in the bills heretofore discussed, except that the motion states that the jury became impatient at the length of the trial. We cannot see the respect in which this presents any error for review.
 

 Prior to sentence, defense counsel filed a motion in arrest of judgment based on the ground that the verdict is fatally defective because the signature of the foreman precedes the verdict and because the word “guilty” has been scratched out and underneath is the printed word “both” followed by the words “guilty as charged”.
 

 The verdict is expressed in plain and intelligible words and its meaning is readily understood. See State v. Broadnax, 1950, 216 La. 1003, 45 So.2d 604.
 

 The conviction and sentence of appellant, Paul Washington, is affirmed.
 

 [1]
 

 . Eight bills have been abandoned in this Court.
 

 [2]
 

 . Nor did they take the stand to refute the voluntariness of any of the confessions while the foundation was being laid for its admission out of the presence of the jury.
 

 [3]
 

 . See State v. Henry, 196 La. 217, 198 So. 910; State v. Graffam, 202 La. 869, 13 So.2d 249; State v. Ellis, 207 La. 812, 22 So.2d 181; State v. Ross, 212 La. 405, 31 So.2d 842, and State v. Wilson, 214 La. 317, 37 So.2d 804.
 

 [4]
 

 . See State v. Wilson, 214 La. 317, 37 So.2d 804, and our recent decision of State v. Honeycutt, 216 La. 610, 44 So.2d 313, where the convictions were set aside because the State failed to prove that the confession was free and voluntary. In both of these' cases, we refused to express any opinion as to whether the confessions were actually involuntary and the State was given the right on the new trial to produce further evidence, if it could, in an effort to show that it was given without intimidation, fear or promises.