218 So.2d 289

**STATE of Louisiana**

v.

**Clarance LAMPKIN.**

No. 49015.

Jan. 20, 1969.

Paul H. Kidd, Ruston, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Ragan D. Madden, Dist. Atty., for appellee.

HAMLIN, Justice:

Clarance Lampkin was charged by bill of information with the crime of simple burglary. LSA–R.S. 14:62. He was found guilty, convicted, and sentenced to serve six years at hard labor in the Louisiana State Penitentiary. He appealed to this Court, presenting for our consideration five bills of exceptions, one taken to the denial of a motion to suppress evidence and four reserved during the course of trial.

On the day set for argument in this Court, neither defendant nor his counsel appeared or filed a brief. The State, having filed its brief, submitted the matter for our disposition. It states in brief, page 2: "After the defendant took the appeal in this matter, that is, on the date of April 1, 1968, he escaped from the Lincoln Parish Jail, committed burglaries of several offices in the Lincoln Parish Courthouse and fled from the State of Louisiana. His present whereabouts are unknown and he is a fugitive from justice."

LSA–R.S. 15:548, the old Code of Criminal Procedure, provided, "If the appellant be a fugitive from justice on the return day or on the day fixed for the hearing of his appeal, the appeal will be

dismissed." This section appeared in Chapter 1, under "Appeal." See, State v. Jugger, 217 La. 687, 47 So.2d 46. Cf. State v. Graves, 246 La. 460, 165 So.2d 285.

In the new Code of Criminal Procedure, effective January 1, 1967, under the "Official Revision Comment" following LSA–C.Cr.P. Art. 919, it is stated: "* * * (c) Former R.S. 15:548 provided that if the appellant was a fugitive from justice on the return day or the day fixed for hearing on his appeal, the appeal would be dismissed. The provision is omitted from this Code, because it is unfair to the defendant. For example, if a man has appealed from a death sentence and he escapes, under the provisions of former R.S. 15:548, the effect is to make the escape a capital offense, since he loses his right to appeal. Furthermore, the more frightened a convicted defendant is, the more likely he is to attempt to escape, and he should not be denied his right to an appeal because of such circumstances." We have also checked the Concordance Table; it recites that there was no replacement for LSA–R.S. 15:548.

Under the circumstances of this appeal, we shall dispose of all bills of exceptions and examine the record for a determination of whether there is error patent on its face.

### BILL OF EXCEPTIONS NO. 1

Bill of Exceptions No. 1 was reserved to the trial court's overruling defendant's motion to suppress evidence.

Counsel for the defendant contended that the ruling of the trial judge was incorrect because: (1) the search warrant which had issued for search of the named premises was issued without probable cause; (2) the search warrant was fatally defective since the place to be searched was not properly and reasonably shown nor properly and reasonably identified; and (3) the search warrant was fatally defective because the property to be searched for was not properly and reasonably described.

The instant crime, the burglary of S and L Laundry, Ruston, Louisiana, was committed on the night of September 17, 1967.

On the night of September 19, 1967, Service Cleaners and Krousel's Shoe Store, Ruston, Louisiana, were also burglarized. An eyewitness gave Police Officer Edward L. Lester a description of the person who had broken into the latter two establishments. The description conformed with that of the defendant Clarance Lampkin, whom Officer Lester knew; Officer Lester also knew that Lampkin was in Ruston and immediately suspected him. A short time later that night, Lampkin was arrested at the residence of a Collins family; he

was bleeding badly from cuts and was immediately taken to the Lincoln General Hospital. Chief O. O. Osborne, who participated in tracking down the defendant, remained with him at the hospital. Officer Lester then went to the home of Judge Fred W. Jones, Jr., Judge of the Municipal Court of Ward One of Lincoln Parish, a committing magistrate. and swore out the following affidavit:

"* * * appeared Edward L. Lester * * * deposes and says:

"That on or about the 17 day of Sept., 1967, in the parish of Lincoln, State of Louisiana, certain personal property belonging to S & L Laundry of the value of $20.00 was feloniously stolen and taken from S & L Laundry that deponent suspects and believes that one certain Clarence Lampkin stole or took said property, and that said property (or a part thereof) is concealed on or about the premises of Barbara Fowler in said Parish and State, said property being described as follows:

"Item of Clothing

"* * * *

"WHEREFORE, deponent prays for process to search the premises of said Clarence Lampkin and Barbara Fowler as provided by law.

"* * * *"

That same night, September 19, 1967, said Judge Jones issued a search warrant which commanded the Sheriff of Lincoln Parish or any of his deputies "to make a diligent search at nighttime of the dwelling and/or the premises of the said Clarence Lampkin and Barbara Fowler."[1] The search ensued, and clothing, the evidence (shirts and jacket) sought to be suppressed, was found.

At the hearing before trial of the motion to suppress, Officer Lester testified that he knew where Lampkin was living, being able to go directly to his door, but that at the time the search warrant issued, he didn't recall the house number; he said that he explained that to the judge. He further testified with respect to his knowledge of Lampkin's past behavior. All events connected with the offenses committed in Ruston led Officer Lester to strongly suspect Lampkin as the person

---

1. Chief Osborne gave the following testimony:

"Q. Did you, talking with Officer Lester, decide that a search warrant should be issued to search Lampkin's house across town?

"A. We didn't discuss it there at all. The boy was cut and bleeding badly and we were mainly concerned with getting him to a doctor at that time. That's the reason I went to the hospital and stayed with him. Shortly after that a warrant was issued, yes.

"Q. But you had no part in the issuance of the warrant.

"A. Well, certainly I o.k.ed it.

"Q. Well, that's what I'm saying. Before the issuance—

"A. I agreed with the idea that we should get a search warrant, certainly."

who had burglarized S and L Laundry on September 17, 1967.

 We have read the testimony adduced at the hearing of the motion to suppress and conclude that the ruling of the trial judge was correct. There was probable cause for the issuance of the search warrant; the place to be searched was designated, and the thing to be seized, "clothing," was recited.[2] Officer Lester was a credible person. Likewise, defendant did not bear his burden of proving that the evidence, "clothing," should have been suppressed. LSA–C.Cr.P., Art. 703. We find that the following per curiam of the trial judge to the instant bill is correct:

"The evidence taken on the Motion is attached to the Bill of Exception. Without reviewing the evidence, it is submitted that the officer had probable cause necessary for the issuance of the search warrant, especially since the defendant was a known burglar; since he has burglarized other cleaning establishments; used similar methods; since he had almost gotten caught in the Krousel Shoe Shop burglary where tools taken from the Service Cleaners burglary were found; and since he had placed clothes in a cellophane bag in the Service Cleaner burglary in the same way as was done at the S & L Laundry burglary; and many other facts related by Officer Lester. These and other facts were related to Judge Fred W. Jones, Jr., and after satisfying himself that probable cause was shown, issued the search warrant.

"It is believed that the designation of the place to be searched as the 'premises of Clarance Lampkin and Barbara Fowler' was sufficient. Barbara Fowler was defendant's sister. Her place of residence, as well as that of the defendant, was well known. It was the only 'premises' these persons had in the Town of Ruston.

"The property 'Items of Clothing' to be searched for is modified by the prior statement that the search was being made for personal property of S & L Laundry stolen from said Laundry.

"We believe the search and seizure to have been fully legal."

Bill of Exceptions No. 1 is without merit.

## BILL OF EXCEPTIONS NO. 2

 Bill of Exceptions No. 2 was reserved when the trial judge refused de-

2. "A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.

"A search warrant shall include a reasonable description of the things to be seized. When a warrant authorizes the search of a place, it shall designate the place to be searched. When a warrant authorizes the search of a person, it shall name or describe the person to be searched." LSA-C.Cr.P., Art. 162.

fendant's challenge for cause of the prospective petit juror Jimmy W. Washam. A peremptory challenge (defendant's twelfth peremptory challenge) was exercised by counsel for the defendant, and the prospective juror was excused.

When questioned by counsel for the defendant, Washam testified that he would believe the defendant guilty if he, the defendant, did not take the stand in his behalf. He later stated that he would abide by the instructions of the court if the court told him that the failure of the defendant to take the witness stand should not be held against him.

Under the circumstances of this bill, we do not find that defendant was prejudiced by using his twelfth peremptory challenge on the prospective juror Washam. Counsel for defendant was later permitted to exercise a thirteenth peremptory challenge, which extra peremptory challenge cured defense counsel's objection. The jury which tried defendant was composed of twelve jurors. No alternate jurors were called and empaneled. Defendant was entitled to twelve peremptory challenges; however, additional peremptory challenges

could have been used only against alternate jurors.[3]

Bill of Exceptions No. 2 is without merit.

### BILL OF EXCEPTIONS NO. 3

█ Bill of Exceptions No. 3 was reserved when the trial court refused defendant's challenge for cause of the prospective juror A. S. Johnson.

Defense counsel urged that Johnson had a fixed opinion as to the guilt or innocence of the accused.

We find no merit in this bill. The prospective juror stated that he thought he would be governed by what was revealed at the trial. He also stated that from what he had read in the newspapers, he had not formed or expressed any fixed opinion as to the guilt or innocence of the defendant.

Bill of Exceptions No. 3 is without merit.

### BILL OF EXCEPTIONS NO. 4

█ Bill of Exceptions No. 4 was reserved when the trial court overruled defense counsel's motion for a mistrial.

Counsel urged that the introduction of other crimes by the district attorney in his

---

3. "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant." Art. 799, LSA-C.Cr.P.

"The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. * * * The court shall determine how many additional peremptory challenges shall be allowed * * *. The additional peremptory challenges may be used only against alternate jurors. * * *" Art. 789, LSA-C.Cr.P.

opening statement was not made for the purpose of proving intent, guilty knowledge, motive, and system of operation. He contended that the district attorney's references to other crimes were to prove guilt by inference.

The district attorney's opening statement recites in part:

"Now, for the restricted purpose of proving intent, guilty knowledge, motive and the system of operation of the defendant, Clarance Lampkin, and not to prove the crime with which he is charged and now on trial before you, the State will further prove by witnesses who will take the witness stand and testify before you, that on the night of September 19, 1967, he, the said Clarance Lampkin, forcibly entered the building that houses the business known as the Service Cleaners belonging to Fred Leachman and Billy Leachman and located in the City of Ruston, Lincoln Parish, Louisiana and took therefrom certain tools consisting of a hammer, hacksaw, prize bars and other tools, all of which will be offered in evidence before you and at the same time he attempted to take from Service Cleaners a lot of clothing and wearing apparel, that on the same night and in the close proximity to the Service Cleaners, the defendant broke into the building which houses the business known as Krousel's Shoe Shop belonging to Richard Krousel, and entering said Krousel's Shoe Shop and before he could accomplish a theft of merchandise therefrom, the defendant was, by noises made from outside the building, disturbed and frightened to such an extent that he, the said Clarance Lampkin, began running out of Krousel's Shoe Shop and ran through a glass door or a glass part of said building, thus cutting himself.

"The State will further produce witnesses who will take the witness stand and testify before you that they saw the defendant, Clarance Lampkin, when he broke the glass out of Krousel's Shoe Shop and ran down the street and away from said building; * * *"

A reading of the testimony attached to the instant bills of exceptions and a reading of the entire opening statement of the district attorney reflect that it was his intention, by his references to other crimes alleged to have been committed by the defendant, to prove the alleged guilty knowledge, motive, system, and intent of the defendant. We find that it was not his intention to prove guilt in connection with the other offenses. It was likewise not his intention to prove the crime charged by his references to other crimes.

We agree with the following from the trial judge's per curiam:

"The District Attorney could not foresee that the defendant would make no effort whatsoever to rebut the legal presumption that 'one found in possession

of stolen property is presumed to be the thief,' and so had to show the circumstances involved in a series of burglaries known to have been committed by the defendant, including the methods used, etc., to impart to the defendant a guilty intent and guilty knowledge as relates to the burglary of S & L Laundry. We believe the evidence involving other burglaries was admissible under the circumstances of this case, under R.S. 15:445 and R.S. 15:446 [4] to show guilty knowledge and intent, but not to prove the offense charged. The offense charged was proved by showing that the defendant had possession of the stolen clothes, and he made no effort to explain it."

Bill of Exceptions No. 4 is without merit.

### BILL OF EXCEPTIONS NO. 5

4. "In order to show intent, evidence is admissible of similar acts, independant of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." LSA-R.S. 15:445.

"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." LSA-R.S. 15:446. See, State v. Reese, 250 La. 151, 194 So.2d 729.

▐▐▐ Bill of Exceptions No. 5 was reserved when the trial court overruled defendant's motion for a directed verdict.[5]

In moving for a directed verdict, defense counsel averred: "May it please the Court, the defense would move for a directed verdict on the grounds that the star witness, Officer Lester and Ronnie Willis have testified that the burglaries of Krousel's Shoe Store and Service Cleaners happened on September the 17th, the night that the State charges Clarance Lampkin with having broken into the S and L Cleaners; that hot pursuit was after Clarance Lampkin on the night of September the 17th and that if he had broken in Service Cleaners and Krousel's Shoe Store on the night of September the 17th as has Officer Lester and as Ronnie Willis testified to, that that would necessarily preclude his breaking into S and L Cleaners on the same night. I

5. "In a jury trial the court may direct a verdict of not guilty of one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

"In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of a defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.

"If the court denies a defendant's motion for a directed verdict or judgment of acquittal at the close of the state's case, the defendant may offer his evidence in defense." LSA-C.Cr.P., Art. 778.

think, in fact, what happened is that the Shoe Store occurred on September the 19th, not September the 17th, which error is date of Service Cleaners and Krousel's fatal."

We have reviewed the attached testimony and find that the defendant suffered no prejudice from the confusion of dates by the State. The district attorney's opening statement alleged what he intended to prove; a reading of it convinces us that the jury was fully apprised that the instant offense occurred on September 17, 1967, and that the other offenses were committed on September 19, 1967. The variance of dates stated in questions to witnesses was not of sufficient consequence to confuse the listener, the jury.

Bill of Exceptions No. 5 is without merit.

In addition to having considered the above bills of exceptions, which we have found to be without merit, we have examined the record and find no error patent on its face.

For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

I find that the majority has erred in four respects in this appeal. First, on the basis of a single casual statement in the State's brief that the defendant who took the appeal in this matter had escaped from the parish jail and was a fugitive, and with no showing in the record that such was a fact, the majority has considered the defendant a fugitive and determined the procedure to be followed now that former R.S. 15:548,[1] which called for the dismissal of a pending appeal if the defendant was a fugitive from justice, is repealed and has no counterpart in the present Code of Criminal Procedure.

In the first reported case on this subject, State v. Wright, 32 La.Ann. 1017 (1880), it was stated: " * * * we are not prepared to say that upon a mere suggestion of such escape or reported escape we would be justified in dismissing his appeal * * *." Much more recently, in State v. Jugger, 217 La. 687, 47 So.2d 46 (1950), Mr. Justice McCaleb speaking for the court said: "It is also well established that, when the motion to dismiss is supported by an affidavit of the sheriff of other officer last having custody of the appellant that he is a fugitive, it will be accepted by this Court as sufficient proof of the statements contained therein if they are not denied. State v. Scruggs [192 La. 297, 187 So. 673], State v. Butler [132 La. 597, 61 So. 682], and State v. Lacroute [134 La. 3, 63 So. 603], supra."

The State did not file a motion to dismiss this appeal or file an affidavit from

---

1. Former R.S. 15:548 provided: "If the appellant be a fugitive from justice on the return day or on the day fixed for the hearing of his appeal, the appeal will be dismissed."

the official last having custody of the defendant establishing the fact of his escape, and· it is error to pass upon the status of the defendant's appeal before this court on the mere suggestion in the State's brief that he is a fugitive. Since there is now no positive legislative enactment on this matter, it is most unwise for this court to attempt to establish a rule of law upon this important subject without benefit of brief and argument presenting all aspects of the question. .

Although I consider it obiter dictum, since the majority has made the enunciation upon this important matter I feel compelled to point to the majority's error in the conclusion and result reached. The dismissal procedure incorporated in the 1928 Code (former R.S. 15:548) had been the law by judicial pronouncement as early as 1884, and the practice of dismissing a pending appeal when the appellant was a fugitive at the time his appeal was to be heard was judicially undeviating. State v. Edwards, 36 La.Ann. 863 (1884); State v. Mansfield, 38 La.Ann. 563 (1886); State v. Porter, 41 La.Ann. 402, 6 So. 337 (1889); State v. Craighead, 44 La.Ann. 968, 11 So.

629 (1892); State v. Butler, 132 La. 597, 61 So. 682 (1913); State v. Lacroute, 132 La. 3, 63 So. 603 (1913). See also State v. Scruggs, 192 La. 297, 187 So. 673 (1939), and State v. Jugger, supra (1950), which were decided after the 1928 enactment of the Code.

The new Louisiana Code of Criminal Procedure, which became effective January 1, 1967, omitted a provision for dismissal of appeals when the appellant is a fugitive from justice, and under Article 919 of that Code a comment is made giving the reason for and expected effect of the omission.[2] While comments may be persuasive, they are not binding upon the court, and the rationale expressed in this particular comment is unsound and even contrary to a pronouncement by the United States Supreme Court. Allen v. Georgia, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949, which has since been cited and relied upon by the Supreme Court and state courts, said:

"We cannot say that the dismissal of a writ of error is not justified by the abandonment of his case by the plaintiff in the writ. By escaping from legal custody, he

2. The comment reads: "Former R.S. 15:-548 provided that if the appellant was a fugitive from justice on the return day or the day fixed for hearing on his appeal, the appeal would be dismissed. The provision is omitted from this Code, because it is unfair to the defendant. For example, if a man has appealed from a death sentence and he escapes, under the provisions of former R.S. 15:548, the effect is to make the escape a capital offense, since he loses his right to appeal. Furthermore, the more frightened a convicted defendant is, the more likely he is to attempt to escape, and he should not be denied his right to an appeal because of such circumstances."

has, by the laws of most, if not all, of the states, committed a distinct criminal offense; and it seems but a light punishment for such offense to hold that he has thereby abandoned his right to prosecute a writ of error, sued out to review his conviction; otherwise he is put in a position of saying to the court: 'Sustain my writ, and I will surrender myself, and take my chances upon a second trial; deny me a new trial, and I will leave the state, or forever remain in hiding.' We consider this as practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority, to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ than that the latter should dictate the terms upon which he will consent to surrender himself to its custody."

Such a court-originated rule as this which is effective in maintaining the dignity of the court and protecting the interest of the State is not necessarily discarded because of its omission from the new Code. The better practice is to recognize the interest of the judiciary and in the absence of specific repugnant legislation to maintain and invoke the rule enunciated by the courts.[3]

The majority has committed the third error by reviewing the bills of exception though brief was not filed nor an appearance made on behalf of the defendant. Counsel for defendant, who the minutes show was retained and not court-appointed, perfected the bills of exception and is still counsel of record, but he neither briefed nor argued the matter. It has been the steadfast rule of this court that where the defendant makes no appearance, the bills of exception are considered abandoned, and the court acts in accord with Article 920(2) of the Code of Criminal Procedure[4] by reviewing only errors which are evident or "patent" on the face of the record. State v. Weaver, 222 La. 148, 62 So.2d 255 (1952); State v. Perry, 239 La. 131, 118 So.2d 130 (1960); State v. Wessinger, 245 La. 409, 158 So.2d 594 (1963); State v. Brown, 245 La. 442, 158 So.2d 605 (1963); State v. Montera, 250 La. 753, 199 So.2d 534 (1967). I would therefore not review

---

3. The comment that " * * * it is unfair to the defendant" to dismiss an appeal simply because he is a fugitive from justice does not meet my understanding of fairness and due process. However, I do not foreclose the possibility of subscribing to a procedure whereby we would merely refuse to consider the appeal so long as the defendant was a fugitive, reserving the right of appeal upon his return to authority and the jurisdiction of this court. See State v. Wright, 32 La. Ann. 1017.

4. Article 920(2) describes such an error as "Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence".

the bills of exception in this case. Finding no error discoverable by mere inspection of the pleadings and proceedings, I conclude that, if the appeal is not to be dismissed, the verdict and sentence should be affirmed.

Finally, although I have expressed valid grounds for dismissing the appeal or, alternatively, for affirming the trial court, because the majority has considered the bills of exception I must discuss what I believe to be the fourth error in the opinion, correction of which would require reversal of the conviction and sentence.

Bill of Exception No. 1 was reversed to the trial court's overruling of the defendant's motion to suppress evidence allegedly recovered under an illegal search warrant. This bill has merit for two reasons: The affidavit for the warrant does not contain facts and information sufficient to support probable cause for the issuance of the warrant, and the affidavit and the warrant fail to clearly and particularly designate the premises to be searched.

Article 1, Section 7, of the Louisiana Constitution states: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no such search or seizure shall be made except upon warrant therefor issued *upon probable cause, supported by oath or affirmation,* and *particularly describing the place to be searched* and the persons or things to be seized." (Emphasis supplied.) This is the same language found in the United States Constitution, Amendment IV, and the United States Supreme Court has held in Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, that the standards set forth in the Fourth Amendment in this regard are applicable to and enforceable against the states through the Fourteenth Amendment.

Before a magistrate or judge may issue a search warrant he must be able to find probable cause for the search from information contained in *the affidavit* submitted to him. The warrant may not be issued merely on the affiant's stated opinion that there is probable cause. The affidavit must itself contain sufficient factual information for a magistrate to make an independent finding of probable cause. "Under the Fourth Amendment, an [judicial] officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. Mere affirmance or belief or suspicion is not enough." Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933); see also Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

The very requirement for a search warrant is founded upon the need to interpose between the police officer and the citizen

a neutral, detached magistrate or judge who shall determine and pass upon whether probable cause exists for the issuance of the warrant. He must determine for himself the persuasiveness of the facts relied upon by a complaining officer to show probable cause and cannot accept without question the complainant's mere conclusions. And finally, if ever there was doubt that the factual information which is the foundation for the determination of probable cause must be contained in the written and executed affidavit, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), put the matter at rest conclusively. That case held that the necessary information for establishing probable cause must exist in the affidavit, and that subsequent proof that the information was available at the time of the issuance would not cure the defective affidavit. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), citing Aguilar, supra, stated: "This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' * * *." Our own state law is equally clear, concise, and demanding in this regard. Article 162 of our Code of Criminal Procedure states in part: "A search warrant may issue only upon probable cause established to the satisfaction of the judge, *by the affidavit* of a credible person, *reciting facts establishing the cause* for issuance of the warrant." (Emphasis supplied.)

Now, in the light of these pronouncements, consider the affidavit executed in the instant case. The essence of the affidavit is that affiant "suspects and believes" Clarance Lampkin stole and concealed items of clothing. There are no facts to support or lend credence to affiant's opinion. This affidavit, executed on a printed form on which the particular information was filled in by hand, is here reproduced, the underlined words being those written in.

"AFFIDAVIT FOR SEARCH
WARRANT
"(STOLEN PROPERTY)

"MUNICIPAL COURT, CITY OF RUSTON, WARD ONE, LINCOLN PARISH, LOUISIANA

"BEFORE ME, the undersigned authority, personally came and appeared Edward L. Lester, who on first being duly sworn, deposes and says:

"That on or about the 17 day of Sept., 1967, in the parish of Lincoln, State of Louisiana, certain personal property belonging to S & L Laundry of the value of $20.00 was feloniously stolen and taken from S & L Laundry

"that deponent suspects and believes that one certain Clarence Lampkin stole or

took said property, and that said property (or a part thereof) is concealed on or about the premises of Barbara Fowler in said Parish and State; said property being described as follows:

Items of Clothing

"WHEREFORE, deponent prays for process to search the premises of said Clarence Lampkin and Barbara Fowler as provided by law.

"Edward L. Lester"

As already stated this bill of exception has merit for the additional reason that the affidavit and the warrant fail to clearly describe the premises to be searched.

The Louisiana constitutional requirement that a warrant issue "particularly describing the place to be searched * * *" is repeated in Article 162, Code of Criminal Procedure, with the words "* * * it shall designate the place to be searched". Again, it is obviously necessary that the magistrate or judge make an independent determination and name the particular place to be searched after considering the affidavit which is before him. The premises to be searched must be designated with such certainty that they are readily and easily identifiable by any officer qualified to execute the warrant. The particularity required in affidavit and warrant is recognized in Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925),

and Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). But see also State v. Lee, 247 La. 553, 172 So.2d 678 (1965), in which we held a warrant invalid where the executing officer by telephone informed the issuing judge that the address in the warrant was incorrect but that he knew the correct address and the proper premises to be searched, and the officer was given permission by the judge to change the municipal number. We said, quoting from 79 C.J.S. Searches & Seizures, § 82, p. 896: "* * * Thus, a warrant is invalid if it is amended by the executing officers, even on the consent of the issuing officer, or on a telephone communication from him. Moreover, the issuing officer cannot amend the warrant unless the affidavit itself is so amended as to conform to the proposed change or unless the original affiant performs some corporal act which would constitute an oath. * * *" See also State v. Chargois, 245 La. 647, 160 So.2d 231 (1964), where a writ applied for by the State was denied because the search warrant was executed at a place other than that described in the warrant. In that case the warrant was issued to search the premises of 5100 Laurel Street. There were two entrances to this building, a business fronting on Laurel Street and a residence on Soniat Street. Although access could be had from the business portion to the residential area by door, we affirmed the

ruling of the trial court suppressing the evidence recovered under the search warrant because entrance was made through the residence on the side street and it, not the business establishment, was searched. We said that " * * * the search warrant was executed at a place other than that described in the warrant".

It is now well established under both Louisiana and federal law that the oath or affidavit required by the Constitutions must be in writing and must contain all the necessary information for a judicial officer to make the required judgment for issuance of the search warrant. Search warrants are to be strictly construed, and the premises to be searched must be designated with "particularity" by the issuing officer on the basis of information contained in the affidavit. The designation of the premises to be searched in the present case as "the premises of said Clarence Lampkin and Barbara Fowler" is not a description of such particularity as is required by our Constitutions, and the warrant relied upon was fatally defective.

As previously stated, I do not consider this bill properly before us, but since the majority has passed upon the bill, I must express my opinion that it has erred in failing to reverse the conviction and sentence because of the merit specified.

I respectfully dissent.

McCALEB, Justice, is of the opinion that the appeal should be dismissed, as it is well settled that, if a person convicted of a criminal offense becomes a fugitive from justice, his appeal will be dismissed. State v. Butler, 132 La. 597, 61 So. 682; State v. Lacroute, 134 La. 3, 63 So. 603; State v. Rogers, 150 La. 1080, 91 So. 518; and State v. Scruggs, 192 La. 297, 187 So. 673. The omission of R.S. 15:548 from the new Code of Criminal Procedure does not effect an overruling of the established jurisprudence of this Court.