292 So.2d 697 (1974)
STATE of Louisiana
v.
George D. BRAY.
No. 54057.
Supreme Court of Louisiana.
March 25, 1974.
Rehearing Denied April 26, 1974.
*699 Donald G. Kelly, Gahagan & Kelly, Natchitoches, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ronald C. Martin, Dist. Atty., for plaintiff-appellee.
BARHAM, Justice.
Defendant was convicted after a trial by jury of manslaughter, a violation of R.S. 14:31, and was sentenced to twenty-one years' imprisonment. On this appeal, defendant relies upon six bills of exceptions for a reversal of his conviction and sentence.[1]
The criminal charge against this defendant arose out of the following circumstances: Defendant was arrested on May 26, 1972, for committing an aggravated battery upon Johnny Mitchell. The battery occurred when defendant and victim, both under the influence of alcohol to some extent, engaged in a fight. Defendant repeatedly struck the victim about the head with the blunt edge of a 5" long, heavy pocket knife, and either stomped or kicked the victim in the head after he had fallen to the ground. Some three months after defendant was arrested for the aggravated battery, the victim died. Defendant, who was out on bail at the time of the victim's death, was re-arrested and charged with murder.
The Grand Jury returned a murder indictment on October 22, 1972. The court minutes reveal that on January 23, 1973, the State orally moved to amend the charge of murder to a charge of manslaughter. The amendment was granted by the trial court and the defendant was thereafter tried for manslaughter, found guilty and sentenced.
BILL OF EXCEPTIONS NO. 1
Defendant reserved this bill of exceptions when the trial court required him to take the stand during a pre-trial motion to suppress an allegedly inculpatory written statement for the purpose of making out a prima facie case of involuntariness. Defendant argues in brief that this action of the trial court constitutes reversible error, even though it may not have been unduly prejudicial, because it resulted in a substantial violation of a constitutional and statutory right.
*700 Code of Criminal Procedure Article 703(C) provides:
"On the trial of a motion to suppress filed under the provisions of this article the burden of proof is on the defendant to prove the grounds of his motion, except that the state shall have the burden of proving that a purported written confession or written inculpatory statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
R.S. 15:451 provides:
"Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
This Court has repeatedly held that these statutes place on the State the burden of proving beyond a reasonable doubt that the statement sought to be used was freely and voluntarily given. State v. Alexander, 252 La. 564, 211 So.2d 650 (1968); State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969). Moreover, in State v. Jugger, 217 La. 687, 47 So.2d 46 (1950), this Court negatived any inference that an accused is obliged to testify in order to establish involuntariness which may have been drawn from its discussion of an issue therein, in the following statement: "* * * Of course, we do not mean by this that an accused is obliged to take the stand in order to show that a confession was involuntary. * * *"
It is clear that the trial court's action in requiring the defense to establish a prima facie case of involuntariness was error. Having thus concluded, we must determine whether this error is of such magnitude as to require a reversal of defendant's conviction and sentence. The yardstick for use in making such a determination is Code of Criminal Procedure Article 921, which provides:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
It is noted that in testifying as required by the trial court, the defendant did no more than verbally restate the written grounds urged in his motion to suppress. The trial court did not allow cross-examination of defendant by the State. After the defendant testified, the State met its burden of proof by presentation of the testimony of three police officers. Under the circumstances, we find that there was no violation of a constitutional right and no substantial violation of defendant's statutory rights.
This bill of exceptions is without merit.
BILL OF EXCEPTIONS NO. 2
This bill of exceptions was reserved when the trial court overruled defendant's motion to suppress. In brief, defendant contends that the State failed to meet its burden of proving that the statement was free and voluntary because it offered no evidence to show that the rights waiver he executed was understandingly given.
Testimony taken at the hearing on defendant's motion to suppress establishes that defendant was first approached about making a statement on the morning after his initial arrest on May 26, 1972. Deputy Fredericks testified that at that time, defendant was read his Miranda warnings and thereafter declined to make a statement. Deputy Fredericks further testified that he received a message from defendant some six days later and, in an interview arranged as a result of defendant's communicated *701 desire to speak to him, obtained the statement defendant was seeking to suppress. Prior to taking defendant's statement, Deputy Fredericks read defendant his Miranda warnings and obtained a signed waiver of rights form. Two other officers, who witnessed the signing of the waiver, were present when defendant was read his rights.
Defendant contends that the motion to suppress should have been granted because there was no showing that defendant understood the rights read to him. We find this argument is without merit. When defendant was first advised of his rights on the day after his arrest, he availed himself of the right to remain silent which was then communicated to him. We are of the opinion that this decision on defendant's part indicates he was aware of and understood the rights of which he was advised. In addition, testimony adduced at the motion to suppress indicates that Deputy Fredericks, a long time acquaintance of the defendant, believed that defendant understood the rights given him and had no indication that defendant did not understand.
We are of the opinion that the trial court did not err in denying defendant's motion to suppress and therefore find this bill to be without merit.
BILL OF EXCEPTIONS NO. 3
At the commencement of trial, when the indictment was read to the jury, the original charge of murder was read before the amendment to manslaughter was read. Defense counsel objected to the reading of the word, "murder", in the jury's presence and moved for a mistrial, which motion was denied. The trial court did, however, admonish the jury that the defendant was on trial for manslaughter and that they were not to allow the use of the word, "murder", to have any effect on them whatsoever.
In brief, defendant contends that the reading of the original charge of murder was prejudicial and constituted a reference to another crime such as would require the granting of a mistrial under Code of Criminal Procedure Article 770. That article reads:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *."
The argument that the reference to the word, "murder", constituted reference to another crime is wholly without merit. The crime mentioned was clearly the crime with which defendant was charged. Defendant's reliance on Article 770 is to no avail. Reference to the word, "murder", in a manslaughter prosecution is unavoidable. The Criminal Code article proscribing manslaughter, R.S. 14:31, contains the word murder and the definition of the crime of manslaughter is such that the definition of the crime of murder must necessarily be communicated to the jury in order that they may understand the elements of manslaughter.
Since there was no formal amendment to the indictment in the case at bar, and since a verbal motion to prosecute a lesser included crime was granted, it is clear that the murder indictment itself, as modified by the State's verbal motion to prosecute the lesser crime of manslaughter, was the basis for defendant's prosecution. In State v. Smith, 49 La.Ann. 1515, 22 So. 882 (1897), wherein a murder indictment was read upon commencement of re-trial of a defendant who had been found guilty of manslaughter on his first trial under the indictment, this Court found no error in the reading of the original indictment even *702 though considerations of double jeopardy precluded defendant's re-trial for murder.
This bill of exceptions is without merit.
BILL OF EXCEPTIONS NO. 4
This bill of exceptions was reserved when, during the State's case in chief, the parish coroner testified concerning certain surgical procedures performed on the victim prior to his death, not by him or in his presence, but by another surgeon. The testimony relative to these procedures given by the coroner, who had been the victim's physician subsequent to the surgical procedures and up to the time of the victim's death, emanated from his review of hospital records concerning the deceased. The basis of defendant's objection was that the coroner's testimony was hearsay and, hence, inadmissible.
In Louisiana, exceptions to the hearsay rule have been confined to those exceptions statutorily provided and those traditionally recognized at common law. See State v. Smith, 285 So.2d 240 (La.1973). In Louisiana, hospital records are statutorily recognized as exceptions to the hearsay rule. R.S. 13:3714. Here, however, we are presented with a double hearsay problem. The hospital records were not introduced into evidence. Instead, the coroner testified on the basis of their contents.
Under the circumstances, and to the extent that the testimony of the coroner which was based on the records was not verified by his own treatment and observation of the victim, we are constrained to hold that admission of the coroner's testimony regarding the surgical procedures was error. However, we are of the opinion that the error committed was harmless beyond a reasonable doubt.
Subsequent to the coroner's testimony, the State presented the testimony of the doctor who performed the surgical procedures. His testimony, which was completely admissible, appears to be compatible in all material aspects with that given by the coroner. After a review of the record, we are convinced that the error complained of did not result in a miscarriage of justice or in prejudice to any substantial rights of the defendant.
This bill of exceptions is without merit.
BILL OF EXCEPTIONS NO. 6
This bill of exceptions was reserved when the trial court overruled defendant's objection to the admission into evidence of photographs of the victim taken shortly after he was beaten. Defendant contends that these photographs were not relevant, since they did not show the actual wounds inflicted, and that they were calculated to, and did in fact, prejudice the defendant.
In Louisiana, it is well established that the test of admissibility of photographs in a criminal prosecution is whether their probative value outweighs their probable prejudicial effect. State v. Fallon, No. 53,371 on our docket, decided January 14, 1974, 290 So.2d 273; State v. McCauley, 272 So.2d 335 (La.1973); and State v. Ford, 259 La. 1037, 254 So.2d 457 (1971). We do not agree with defendant's contention that these photographs were irrelevant and lacked probative value. By tireless cross-examination the defense attempted to convince the jury that some cause, other than defendant's attack on the victim, may have brought about his ultimate death. We find that the photographs were relevant to show the extent of the injury inflicted upon the victim in the beating and were not unduly prejudicial to the defendant. The photographs, while certainly not pleasant depictions, are not gruesome or inflammatory. They are black and white photographs which indicate that the victim was beaten about the head and that blood was shed.
We hold that the trial court did not err in allowing these photographs to be introduced into evidence. This bill of exceptions is without merit.
*703 BILL OF EXCEPTIONS NO. 8
This bill was reserved when the trial court overruled a defense objection to the State's inquiry, during cross-examination of the defendant during testimony he gave in his own behalf, regarding a prior conviction for manslaughter. The purpose of the State's inquiry was to impeach defendant's credibility. R.S. 15:495.
Defendant contends in brief that cross-examination as to prior convictions which do not involve dishonesty or directly bear on veracity constitutes a denial of due process and equal protection. These same arguments were considered and found to lack merit in State v. Prather, 290 So.2d 840, No. 53,979 on our docket, decided February 18, 1974. Under this jurisprudence, the bill is without merit.[2]
For the foregoing reasons, defendant's conviction and sentence are affirmed.
SUMMERS, J., concurs in the result.
NOTES
[1] Defendant perfected eight bills of exceptions but expressly abandoned two of these bills in brief.
[2] See the writer's dissent on this issue in State v. Prather, supra.