THE STATE *v.* JOHN MULHOLLAND.

Although the rule is that evidence of the commission of a felo.iy distinct from the one charged in the indictment, is inadmissible, yet an exception lies when the purpose is to prove that the prisoner was actuated by malice.

The testimony of a witness before an inquest, may be admitted to discredit his testimony at the time of trial.

Confession is admissible in evidence where it has been elicited by questions put by a person having no authority, as where the party asking them is a police officer.

APPEAL from the First District Court of New Orleans, *Hunt, J.*
*A. P. Field* and *É. Filleul,* for appellant.   *T. G. Semmes,* Attorney General, for the State.

VOORHIES, J.   The prisoner was sentenced to death for the crime of murder.

On appeal he asks the reversal of this judgment on several grounds, which are brought up by bills of exception.

1.   The Attorney General, in the court below, propounded to a witness the following question:

"What conversation took place between the prisoner and said Condon as to the manner in which the said Condon received his wound, and by whom inflicted?"

The party killed was an individual by the name of W. O. Somers; and Condon, the quarter-master of a steamship, was wounded whilst attempting to effect the arrest of the prisoner.   The latter objected to the question above on the grounds:

1st.   "That it was hearsay and irrelevant testimony, raising a collateral issue and tending to create a prejudice in the minds of the jurors against the prisoner."

2d.   "That the stabbing of Condon was a distinct felony."

The Attorney General stated that his object was two-fold,—to prove a tacit confession on the part of the prisoner, and to show malice; that for that purpose, and the evidence being part of the *res gestæ*, the objections raised against its inadmissibility, were without foundation.

The District Judge allowed the question to be propounded; but, the answer being deemed unsatisfactory, the counsel for the State on the spot requested the Court to inform the jury that the answer was not properly before them.   This was complied with; and the Judge, in his charge, subsequently reiterated the instruction.

We think the question was a proper one, the District Judge being satisfied that the matter to be elicited by it formed part of the *res gestæ.*

Furthermore, although the rule be that evidence of the commission of a felony distinct from the one charged in the indictment, is inadmissible, yet an exception lies when the purpose is to prove that the prisoner was actuated by malice. 3 An. 512, *State* v. *Patza;* 12 An. 382, *State* v. *Rohfrischt.*

When the commission of both offences are closely linked or connected, as, for instance, when upon the consummation of the first, and whilst being hotly pursued, the prisoner, to avoid capture, commits the second offence,—it is difficult to perceive why evidence of the whole transaction should not be legal, notwithstanding two distinct felonies have thus been perpetrated. Roscoe, Evid., p. 82.

The objection that Condon's declaration was merely hearsay, is of no weight; for the question related to a conversation between him and the prisoner. I Greenleaf, ¿ 199; *State* v. *Johnston*, 10 An. 456.

2. Another bill of exception raises the question of the legality of admitting the testimony given by a witness at the inquest held by the Coroner, for the purpose of discrediting him before the jury.

The defendant's counsel bases his objection on the ground that the accused is not present when the inquest is held, and that he has no opportunity to cross-examine the witnesses. If the credit of a witness may be impeached by proof that he has made statements out of court, contrary to what he has testified at the trial, there can be no difficulty in admitting, for that purpose, the examination reduced to writing and subscribed by witnesses interrogated on the inquest. Such examination, however, is not evidence against the prisoner, but is intended merely to discredit the witness, who at the trial, and previously, may have made contradictory statements, in such matters as are relevant to the issue. Greenleaf, Evid. ¿462. Hence it is not necessary that the prisoner should have had an opportunity of cross-examining the witness.

3. The last bill of exception presents the question "whether a police officer has the right to ask a question of a prisoner in his custody."

In their brief the defendant's counsel state: "This evidence of the police officer, having the prisoner in charge and bringing him to jail, ought not to have been received, without the State having first negatived any promise or inducement held out by the police officer; before receiving the admission of the prisoner in evidence, the Judge must require evidence that the confession is free and voluntary."

We will here observe that nothing of the kind is to be found in the record. The statement of the District Judge, which stands in lieu of the lost bill of exception, does not even allude to the objection that the admission was not free and voluntary; this ground of complaint consequently is not before the Court.

Upon the question properly before us the authorities are clear. "A confession, says Roscoe, p. 45, is admissible in evidence, where it has been elicited by questions put by a person having no authority. Wilde's Moo. C. C. 452,—ante p. 40; so where the party asking them is a police officer."

The counsel for the accused states in his brief that the State witness McMullen committed suicide on the very day that sentence of death was passed on the prisoner; and, in this connection, he makes a strong appeal to this court in behalf of his client. This circumstance may have its

48

weight with the Executive, with whom is vested the pardoning preroga-
tive; but it is of no avail before a tribunal, whose jurisdiction in crimi-
nal matters is limited by the Constitution to questions of law.

Judgment affirmed.

MERRICK, C. J., concurring. The question propounded to the witness
McMullen in regard to what conversation took place between the prisoner
and Condon as to the manner in which he, the said Condon, received his
wound and by whom it was inflicted, was, I think, illegal for one of the
purposes offered, and legal for the other purposes.

The question was propounded to prove facts assumed to form part of
the *res gestæ* and to prove ferocity and malice.

The Attorney General stated that he expected to prove by the declara-
tion made by Condon in the presence of the prisoner and not denied by
him, that while the witness McMullen was in hot pursuit of the prisoner,
he the prisoner rushed on board the steamship *Habana*, and Condon the
quarter-master in attempting to stay the flight of the prisoner and to
arrest him, was stabbed by him, and he immediately jumped into the coal
boat alongside and concealed himself where he was a few minutes after-
wards found.

Testimony (so the bill of exception informs us) had already been intro-
duced tending to prove that the defendant had stabbed the deceased and
immediately fled to said steamship *Habana* lying at the levee but a short
distance from the scene of the stabbing, say about forty or fifty feet, and
had passed through the steamship and jumped into a coal boat alongside
of said steamship, where he was found a few minutes afterwards by the
witness McMullen; and the said witness having so found the prisoner,
immediately brought him on board the steamship in the presence of Wil-
liam Condon who was bleeding from a recent wound or cut, and the wit-
ness confronted the prisoner with the wounded quarter-master.

Thus it will be perceived, that had the tacit confession existed, which
it was hoped the question would elicit, it would so immediately have fol-
lowed the fatal blow given to W. O. Somers and been so connected with
the flight of the prisoner, as to be considered a part of the *res gestæ*.

It was therefore legal evidence. It tended to identify the prisoner and
inferentially to show malice by showing a consciousness of guilt by
resorting to such extraordinary and desperate means to escape.

But whilst the testimony was legal as forming a part of the *res gestæ*
and inferentially to show malice, it was inadmissible to prove ferocity.

The question in all cases of homicide, under the certainty of proof
required by our law, is, did the accused inflict the mortal wound, or
administer the poison, or the like?—Not, is he an evil disposed man, or
a ferocious man, for these and the like questions go to the character
of the accused which in general is not the subject of inquiry before the
jury.

Now, suppose the State had simply offered the testimony for the pur-
pose of showing the *res gestæ* and inferentially to show malice in the ac-
cused, and the same or other illegal answer had been given by the wit-
ness: would it have been error when the answer was immediately waived
by the State, and the Court directed the jury to disregard it, and in-
formed them it was not evidence? Should it be in the power of a witness
by an illegal answer to a legal question to render abortive the most for-

mal and solemn proceedings in a criminal cause? These questions answer themselves. ·

Again, has the discarded answer to the question asked by the Attorney General prejudiced the accused more than it would have done if he had propounded the same question merely to show the *res gestæ* and prove malice, or the court had received it for those purposes only? I cannot say that it has, and consequently I cannot say that the Court erred even assuming that the momentary reception of illegal testimony under an illegal examination of witnesses, is an error which cannot be cured by the subsequent withdrawal of the same by the State and the explicit charge of the Judge to the jury to disregard the evidence.

In regard to Hobsden's testimony, the examination before the Coroner was admissible to impeach the witness; it was a question for the jury to say, whether the testimony before them was in conflict with the general tenor and principal facts of McMullen's testimony which he, Hobsden, had "in the main" corroborated before the Coroner.

I also concur with my colleagues on the other questions considered in this case.