(120 So. 614)

No. 29682.

**STATE v. LESLIE.**

Jan. 28, 1929.

E. L. Stewart, of De Ridder, for appellant.
Percy Saint, Atty. Gen., John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty., both of Lake Charles (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

THOMPSON, J. This is an appeal from a sentence of 6 to 18 years in the penitentiary. The crime is cutting with a dangerous weapon with intent to commit murder.

The defendant relies on errors alleged to have been committed to his prejudice which are embraced in 14 bills of exception.

The crime charged against the defendant resulted from a general family row between the defendant on the one part and his sister and her son and son-in-law on the other. The fracas occurred on a public road near the defendant's house and some 200 yards from the house of the other participants.

As a sequence to the difficulty the defendant was indicted by the grand jury under the separate and distinct bills, first for assault and battery and assault with a dangerous

weapon on his sister; second, with cutting with intent to murder the son of his sister; and, third, cutting with intent to murder the son-in-law of his sister.

The defendant was arraigned and put on trial for the last-mentioned charge, and after a jury had been selected and impaneled the district attorney moved to consolidate the case of assault and battery and assault with a dangerous weapon with the one on trial. The defendant objected to the consolidation for the reason that the defendant was on trial for an offense that would imprison him in the penitentiary or for a term in the parish jail, and the prosecution of the two cases at the same time would divert his (defendant's) attention and render him less able to defend himself in the case on trial before the jury.

The motion to consolidate was approved by the court for the reason that the misdemeanors grew out of and were a part of the res gestæ of the cutting charge for which defendant was being tried. There were 36 witnesses in the case, and the court was of the opinion that it would be a useless waste of time to hear the same story from the same witnesses on three separate and distinct trials.

This ruling of the court forms the subject of the first bill.

If the consolidation of the misdemeanor cases with the felony case had been with the view and for the purpose of having all of the cases tried and determined by the jury, then the action of the court would have been manifestly illegal, and this for the simple reason that the felony charge was triable by a jury and the misdemeanor charge was triable by a judge. The misdemeanor charge was not included and could not have been included in the charge of cutting with intent to murder.

The assault and battery and assault with a dangerous weapon were upon a different person from the one the defendant was charged with cutting.

■ It is clear therefore that the several charges could not have been cumulated in one indictment and could not have been consolidated for the purpose of being tried and determined by the jury. We do not understand that this was the purpose of the consolidation. As a matter of fact, the misdemeanor charges were not submitted to the jury and were not considered by the jury. The jury alone tried the cutting charge, and it was on that charge alone that the jury rendered its verdict.

It is true evidence of the misdemeanor charge went to the jury, but that was unavoidable.

The several offenses grew out of the same difficulty and were so closely linked and connected as to form a single transaction.

A recital or story of the commission of the felony involved the recital or story of the misdemeanor and vice versa.

The two were inseparable.

■ It is a well-settled rule of law that a person may commit several separate and distinct crimes at the same time or in immediate connection and be indicted for each of said crimes. State v. Faulkner, 39 La. Ann. 811, 2 So. 539; State v. Montcrieffe, 165 La. 298, 115 So. 493.

■ And whatever occurs at the time and place of the commission of the several crimes is admissible as res gestæ in the trial for either of the concurrent crimes. State v. Corcoran, 38 La. Ann. 952; State v. Anderson, 45 La. Ann. 653, 12 So. 737; State v. Vines, 34 La. Ann. 1079.

Where the commission of both offenses is closely linked or connected, evidence of the whole transaction is legal, although two distinct felonies have been committed. State v. Mulholland, 16 La. Ann. 376.

In the instant case, whether there had been a consolidation or not, all of the evidence of the assault and battery and of the assault with a dangerous weapon properly went to

the jury as part of the res gestæ. Indeed, there was no objection made, and none could have been legally made as appears from the authorities cited.

We are unable to perceive wherein the defendant has suffered any prejudice, or has in any manner been affected in his defense of the felony charge the only charge tried or that could have been tried by the jury selected.

And after all is said there was no consolidation in the legal sense in which the term is used. For, as already stated, the jury only tried the felony case and had nothing to do with the misdemeanor charges.

■ The trial and determination of the last-mentioned charges was left to the judge alone. In other words, while the jury was hearing the felony charge, the judge was hearing the evidence which involved the misdemeanor charges.

The method of procedure was for the convenience of the judge to avoid a multiplicity of trials before him upon the same evidence.

This was the full extent and full effect of the so-called consolidation.

In this proceeding the defendant was not affected or prejudiced in any of his constitutional or statutory rights, privileges, or immunities.

Bill No. 3 recites that Eugene Farris had testified that he was on the road to Sunday school at the time of the difficulty, when defendant sought by cross-examination to show that the difficulty occurred some three hours before Sunday school time, and hence to establish the fact that the witness was not going to Sunday school, but going to the home of the defendant to attack him.

The court says that the bill incorrectly states the purpose of the examination of the witness, and this appears to be true from the testimony attached to the bill.

The question asked and ruled out as immaterial was:

"Q. Had you been to Sunday school the Sunday before?" To which the witness answered, "Yes."

The court did not deny the defendant the right to show that the Sunday school met in the afternoon and that the difficulty occurred in the forenoon as contended by the defendant. There is obviously no merit in this bill.

■ The defense urged was self-defense, and bills 2, 4, 5, 6, 7, and 8 are directed to the refusal of the court to permit the defendant to prove previous threats made against the accused, not by Cumings, the person cut, but by his brother-in-law, Eugene Farris. The evidence was ruled out for the reason that no overt act on the part of the victim of the cutting had been established.

In his brief, counsel for defendant contends that five witnesses, one the defendant and the other four his relatives, testified that Cumings and members of his family came upon him in a hostile attitude and assaulted and beat him, and from this it is argued that the jury had the right under our jurisprudence to decide the question and to determine whether the overt act by the prosecuting witness had been sufficiently proven. Counsel, however, cite no authorities to sustain his contention that it is for the jury to decide whether an overt act had been established or not.

The authorities are to the contrary.

"Whether or not there has been sufficient evidence of overt act to serve as a foundation for the introduction of evidence of the dangerous character of deceased or of his previous threats against accused is a question of law to be decided by the trial judge, whose ruling will not be reversed unless manifestly erroneous, even though the ruling be founded on the judge's disbelief of the witnesses to overt act, for the sufficiency of the evidence and the credibility of the witnesses are questions left to the trial judge; and his statement in the bill of exceptions that foundation

was not laid must be accepted, when uncontradicted, or there is no proof of the incorrectness of such statement." Marr's Crim. Juris. (2d Ed.) § 70; State v. Pullen, 130 La., 249, 57 So. 906; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Tasby, 110 La. 121, 34 So. 300.

In his per curiam the trial judge says that no overt act on the part of the prosecuting witness was shown. He states that nine witnesses testified that defendant without any justification struck his sister across the face and nose with a shotgun and that the prosecuting witness was cut when he went to her aid, the woman being the mother-in-law of the prosecuting witness.

It also appears from the defendant's own testimony that he armed himself with a shotgun and left his own inclosure and went down the road, where he met Cumings and ordered him off of the road. The decided weight of the testimony and circumstances clearly showed in the opinion of the court that the defendant was the aggressor.

In view of this finding of the court and no evidence appearing to the contrary, it is idle to argue that a foundation had been laid for the admission of evidence of threats on the part of the prosecuting witness.

And it is likewise idle to argue that the question of whether an overt act had been established should be submitted to the jury, in view of the well-settled jurisprudence to the contrary.

Bills 9, 10, and 11 complain of the refusal of the trial judge to permit evidence of the general character and reputation of the defendant as a peaceable and law-abiding citizen. The complaint is fully answered by the trial judge in his per curiam, from which it appears that the witnesses stated to the district attorney, to defendant's counsel, and to the court that they had not heard defendant's reputation discussed. The court refused to allow the question to be asked a fourth time.

The court further stated that, after the testimony was taken out of the presence of the jury and the jury returned, the witness Hagan, referred to in bill 9, again stated before the jury that he had not heard defendant's reputation discussed prior to the difficulty.

The three bills just referred to are without merit.

Bill No. 13 complains of certain portions of the judge's charge as being a comment on the facts and also of the refusal of the court to give a special charge requested by the defendant.

The charge is in the record, omitting merely formal parts, and we are unable to find any improper comment upon the facts.

The charge covered the various phases of the case as contended for by the state and by the defendant.

The judge did not express any opinion as to the facts of the case; on the contrary, had expressly stated to the jury that he could not and did not comment on the facts; that the jury were exclusive judges of the facts and of the weight of the evidence and the credibility of the witnesses.

The requested charge, which was refused, was to the effect that, although the defendant was the aggressor in and brought on the difficulty, he is under no obligation to retreat or to offer to retreat if during the difficulty he is held by the prosecuting witness or others so that he cannot retreat, as it would be useless for him to offer to retreat and would expose him to greater danger. The reasons assigned by the judge for refusing to give the charge were: (1) That it did not correctly state the law; and (2) because the general charge fully covered the matter.

We think the charge was properly refused because it embodies an assumption of fact,

was calculated to mislead the jury, and is not a proper statement of the law.

It is a well-settled rule of law that one who provokes or brings about a difficulty and himself creates a situation and condition necessitating the use of force to protect himself from death or great bodily harm cannot plead self-defense or justification, unless before the necessity arises for him to act in self-defense he abandons the difficulty ' in good faith and so informs his adversary.

And he is not relieved of the necessity of giving notice of his willingness and intention to quit because of the fact that he is temporarily checked or restrained by his adversary from further pursuing or continuing his original design.

The last bill which was reserved to the overruling of a motion for a new trial presents nothing we have not already considered.

For the reasons assigned, the conviction and sentence are affirmed.

O'NIELL, C. J., dissents from the ruling allowing the three cases to be consolidated.