437 So.2d 994 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Steve BROCKINGTON, Defendant-Appellant.
No. CR83-21.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1983.
John Larry Vidrine, Ville Platte, for defendant-appellant.
A. Bruce Rozas, Asst. Dist. Atty., Ville Platte, for plaintiff-appellee.
Before DOUCET, YELVERTON and KNOLL, JJ.
*995 DOUCET, Judge.
Melton Lee Gallow died shortly after being shot three times, with a .22 caliber pistol, by Steve Brockington on April 8, 1982 in Ville Platte, Louisiana. Brockington was subsequently indicted by grand jury, charged with Second Degree Murder pursuant to R.S. 14:30.1. At trial, defendant asserted he acted in self-defense. The jury rejected the defense and returned a unanimous verdict of guilty as charged. Defendant appeals, assigning as error that the verdict of the jury is inconsistent with the law and evidence as presented at trial. We affirm.
There are three principal individuals in this case: the defendant, the decedent and a woman named Phyllis Frank. Melton Gallow, a/k/a Mickey Gallow, began living with Phyllis Frank on or about Thanksgiving Day of 1980. This relationship lasted approximately six to eight months until a dispute arose and the couple parted ways. Thereafter, Phyllis Frank met the defendant herein, Steve Brockington, in the latter part of October of 1981, and they began living together two months later. Prior to this alliance, Gallow still considered Phyllis Frank to be "his woman" and he demonstrated this possessiveness in November of 1981 when he forcibly entered Phyllis Frank's apartment and proceeded to threaten the life of and inflict a brutal beating upon Steve Brockington. Brockington fled the apartment and Gallow followed him into the street. The police quickly arrived and broke up the disturbance but made no arrests. In March of 1982, while Brockington and Frank were living together, the defendant left Ville Platte, traveling to Dallas to get a divorce from his second wife. Upon return, approximately three weeks prior to the fatal shooting, the defendant suspected Phyllis and the decedent had reunited and an argument ensued which resulted in their separation. Subsequently, Phyllis resumed seeing Mickey Gallow.
On April 8, 1982 Phyllis Frank, accompanied by an acquaintance, Isaac Gallow, whom she met through the defendant, went to Joe's Happy Landing, a lounge, on Dr. Carver Street in Ville Platte. At the nightclub, Isaac and Phyllis met some friends and discussed going to Eunice, Louisiana. The defendant approached Isaac and Phyllis and inquired about a receipt for a bill that the latter had paid a finance company on Brockington's behalf. Phyllis informed the defendant that she was planning to depart and they would have to discuss the matter later. She proceeded to exit the lounge and defendant followed. An argument ensued outside whereupon the two exchanged physical blows approximately 145 feet down the street from the lounge. At this point, the versions of the facts vary.
The defendant contends that during his struggle with Phyllis Frank, Mickey Gallow came up on him from behind armed with a knife. He turned around as Gallow approached threatening him and pulled a gun from his back pocket and proceeded to shoot Gallow three, possibly four times from a distance of five feet.
According to Phyllis Frank, Mickey Gallow had calmly approached the fighting couple and interjected that the police were coming and pleaded with the defendant to leave Phyllis alone whereupon Brockington turned and fired three shots at Gallow. At no time did Phyllis recall Gallow having any weapon whatsoever. With each shot Gallow retreated, finally seeking cover underneath a nearby car where he was joined by Phyllis Frank. Thereafter, the defendant shot twice underneath the car, missing both Gallow and Frank. The defendant fled the scene. Frank's version of the incident was corroborated by Sherry Ann Adams who witnessed the shooting from a ways down the street. Winnie Simon testified similarly.
Officer Joseph Toussant of the Ville Platte Police Department, while patrolling the area known as "The Front", discovered Mickey Gallow underneath the car. Officer Toussant notified headquarters of the shooting, which dispatched additional units. Gallow died before medical help arrived.
The defendant was apprehended the same evening at the home of his former *996 in-laws, where the revolver used in the shooting was also retrieved.
Dr. George McCormick, forensic pathologist, performed an autopsy on Gallow's body on April 9, 1982. He found the victim had been shot three times: in the left chest, the right upper arm, and right forearm. Additionally, there was a fourth traumatic injury of unknown origin consisting of a laceration of the first finger of the right hand described as a "defense wound" by Dr. McCormick. In the course of preparing the body for the autopsy, Dr. McCormick discovered a folding buck knife, 4½ inches long, between the buttocks of the deceased who was clad only in boxer shorts at the time Dr. McCormick received the corpse. No blood was found on the knife. Dr. McCormick theorized that, if the knife had been placed between Gallow's buttocks after the shooting, blood would have appeared on the knife. The body's state of rigor mortis was the reason the knife had not fallen earlier. Phyllis Frank testified that the decedent wore tight jeans, thereby explaining the knife's suspended location.
David Epstein, a forensic chemist at Acadiana Crime Lab, testified that the bullets retrieved from the body corresponded with the revolver seized by the police at the time of defendant's arrest.
At the conclusion of the trial the jury found defendant guilty of second degree murder and he was subsequently sentenced to life imprisonment without benefit of parole. On appeal defendant alleges the verdict of the jury is contrary to the law and evidence presented at trial.
Second degree murder is the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm. La.R.S. 14:30.1.
The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The critical inquiry when reviewing the sufficiency of evidence is to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, supra at 2789.
The Jackson standard of factual review of sufficiency of the evidence applies in Louisiana. State v. Mathews, 375 So.2d 1165 (La.1979) and State v. Abercrombie, 375 So.2d 1170 (La.1979). See also: State v. Shapiro, 431 So.2d 372 (La.1983).
Where self-defense is claimed by the defendant, the State has the burden of proving beyond a reasonable doubt that a homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La. 1982); State v. Collins, 306 So.2d 662 (La. 1975); State v. Patterson, 295 So.2d 792 (La.1974); State v. Sharp, 338 So.2d 654 (La.1976). A homicide is justified as self-defense only if a person using such force reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. State v. Guinn, 319 So.2d 407 (La.1975).
An aggressor or one who brings on difficulty, as a general rule, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and indicates his intention of abandoning the difficulty. State v. Stroud, 198 La. 841, 5 So.2d 125 (1941); State v. Leslie, 167 La. 967, 120 So. 614 (1929); La.R.S. 14:21. Where doubts exist as to whether the accused was an aggressor, the possibility of *997 retreat is only one of many factors for the jury to consider in determining whether the defendant has a reasonable belief that the killing was necessary. State v. Collins, 306 So.2d 662 (La.1975). Factors to be considered in determining whether the party attacked had a reasonable belief that it was necessary to kill are the excitement and confusion of the occasion, the possibility of using force or violence less than killing, and the party's knowledge of his assailant's bad character. Reporter's Comment to La.R.S. 14:20.
In a case similar to the present, the Louisiana Supreme Court held that the numerous stab wounds sustained by the victim furnished adequate evidence to support a finding of specific intent to kill required to sustain a conviction for second degree murder. State v. Carney, 319 So.2d 400 (La. 1975). Here, the defendant shot the victim three times. Viewing the evidence in a light most favorable to the prosecution, the victim was not armed and he retreated after the first shot. Continued use of deadly force was no longer necessary if indeed it ever had been. Nevertheless, the defendant continued firing. In fact, even after Gallow and Frank sought cover underneath the car, Brockington pursued them, firing two additional shots. Furthermore, even if the defendant was not the aggressor with respect to Gallow, he did bring about the difficulty with his altercation with Frank. We find the evidence supports the jury's verdict.
For the reasons assigned, the defendant's sentence and conviction are affirmed.
AFFIRMED.