CARTER, Judge:
Defendant, Robert Matthews, was charged by grand jury indictment with the second degree murder of Jimmy Charles in violation of LSA-R.S. 14:30.1. After pleading not guilty, defendant was tried by a jury and found guilty as charged. He received the mandatory sentence of life imprisonment without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction, alleging five assignments of error.
FACTS
On the night of June 25, 1983, a confrontation occurred in East Feliciana Parish between defendant, Robert Matthews, his brother Raymond Matthews, and Hollis El-zey on one side and Jimmy Charles, the decedent, on the opposite side. Jimmy Charles had been living common-law with Mary Elzey, mother of Hollis Elzey. At approximately 9:00 p.m. on the night of the confrontation, Jimmy Charles went to Raymond Matthews’ home and pulled Theresa Elzey, a fifteen-year-old female, out of the house. He drove her around for awhile and then released her on the streets of Clinton, Louisiana. Shortly thereafter, Jimmy Charles armed himself with a .38 caliber revolver and around 10:30 p.m. met Hollis Elzey, Raymond Matthews, and defendant, Robert Matthews, at the American Legion Club and Tucker’s Liquor Store in Clinton, Louisiana.
Raymond, Robert, and Hollis had apparently learned of the events concerning Theresa, and a heated argument occurred. Hollis Elzey and Jimmy Charles exchanged words, and a fight subsequently ensued resulting in Jimmy Charles shooting Hollis Elzey five times and Jimmy Charles being shot and killed by Robert Matthews.
The state contends that Robert Matthews, Raymond Matthews, and Hollis El-zey conspired to and actually carried forth with their plan to kill Jimmy Charles. The defendant maintains that the homicide was justifiable in self-defense and/or in defense of others.
Shortly after defendant’s arrest on June 26, 1983, his account of the events which led to the shooting are as follows:
On June 25, 1983 at around 10:30 p.m. I was at home and Elaine and Ola Mae came to the house and told me that Jimmy Charles [the victim], Hollis Elzey and Raymond Matthews were around at James Wilson’s place [a grocery store] arguing and wanted me to go around there and talk to them, so me and my wife went to James Wilson’s place and when I arrived Hollis and Raymond were in the street talking to Calvin Befley. Hollis said he was going over to talk to Jimmy Charles who was standing near the ice machine in front of James Wilson’s place and Raymond got a 12 gauge shotgun and shood (sic) it up against a truck parked in front of the American Legion [Club] and I was standing next to the shotgun. Raymond then waled [sic] over to where Jimmy Charles and Hollis was. Raymond stayed over there for approximately 5 to 10 minutes then start *42 ed walking back towards where I was and I saw Jimmy Charles and Hollis arguing. Then Hollis turned and walked away from Jimmy Charles and then Jimmy Charles started shooting at Hollis with a 38 caliber pistol. I picked up the shotgun and shot Jimmy Charles after Hollis (my brother-in-law) fell to the ground. Raymond is my brother.
However, defendant, in his testimony at trial, denied that Raymond Matthews had brought the shotgun to the scene and placed it against the truck prior to the shooting. Defendant testified that when the shooting began, he fell to the ground and “the gun was there.” He could not explain how the gun came to be by the truck.
Richard Davis, the owner of the American Legion Club, gave the following account of the events which led to Charles’ death: When defendant reached the scene, Hollis and Raymond were already there. The three men (defendant, Hollis, and Raymond) conversed for a short period of time. Hollis and Raymond walked over to the victim who was in front of the grocery store near the ice machine. Hollis began talking to the victim and hitting on the ice machine. During the course of the conversation, the defendant positioned himself behind the bed of a truck. Defendant then armed himself with a pistol and aimed it in the direction of the three men. Hollis and Raymond then walked a short distance away from the victim, and Raymond handed defendant the shotgun saying, “Take this. You might miss him with that little ole (sic) pistol.” Defendant put away the pistol and aimed the shotgun over the bed of the pickup truck in the direction of Jimmy Charles. Hollis and Raymond then walked back to where Jimmy Charles was standing, and Jimmy Charles then drew the pistol and shot Hollis. Defendant then shot Jimmy Charles with the shotgun.
Other witnesses testified that defendant had aimed a pistol at Jimmy Charles and that Raymond had placed the shotgun near defendant. Another version noted that pri- or to the shooting, Hollis Elzey hit Jimmy Charles several times with his fist and once with a coke bottle.
ASSIGNMENTS OF ERROR
Defendant-appellant, Robert Matthews, relates the following assignments of error:
1. The jury erred in finding the accused guilty in that it failed to properly apply LSA-R.S. 14:18; 14:20; 14:21; and, 14:22;
2. The jury erred in finding the accused guilty in that the verdict is contrary to the law and the evidence;
3. The court as a matter of law erred in failing to grant a judgment of acquittal notwithstanding the verdict because the accused could not possibly be found guilty if the jury had properly applied LSA-R.S. 14:18; 14:20; 14:21; -and 14:22;
4. The court as a matter of law erred in failing to grant a new trial; and,
5. The jury and the court erred under the rule of Jackson v. Virginia and LSA-C.Cr.P. art. 804 and LSA-R.S. 15:271 in that they did not require the state to prove beyond a reasonable doubt that the accused was not acting in self-defense and in defense of another as authorized by law.
Defendant, in support of his assignments of error, advances two specific arguments. First, defendant contends that the state’s evidence was insufficient to sustain the conviction of defendant on the charge of second degree murder. The second argument advanced by defendant is that the homicide was justified because it was done in self-defense as a result of the aggressive actions of the victim.
A defendant, who has been indicted for homicide and asserts that he acted in self-defense of himself or another, does not assume any burden of proof whatsoever on that issue; the state has the entire and affirmative burden of proving beyond a reasonable doubt that a homicide was felo-niously committed and was not perpetrated in self-defense or in defense of another. LSA-R.S. 14:20, 22; State v. Patterson, 295 So.2d 792 (La.1974); State v. Pittman, *43 428 So.2d 979 (La.App. 1st Cir.1983), writ denied, 433 So.2d 155 (La.1983); cert. denied. — U.S. —, 104 S.Ct. 122, 78 L.Ed.2d 120 (1983).
In State v. Brockington, 437 So.2d 994, 996-997 (La.App. 3rd Cir.1983), our brethren of the Third Circuit summarized the jurisprudence on self-defense as follows:
A homicide is justified as self-defense only if a person using such force reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. State v. Guinn, 319 So.2d 407 (La.1975).
An aggressor or one who brings on difficulty, as a general rule, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and indicates his intention of abandoning the difficulty. State v. Stroud, 198 La. 841, 5 So.2d 125 (1941); State v. Leslie, 167 La. 967, 120 So. 614 (1929); La.R.S.' 14:21. Where doubts exist as to whether the accused was an aggressor, the possibility of retreat is only one of many factors for the jury to consider in determining whether the defendant has a reasonable belief that the killing was necessary. State v. Collins, 306 So.2d 662 (La.1975).
In the instant case, the state presented evidence that defendant accompanied Hollis and Raymond when they confronted the victim, that prior to this confrontation defendant armed himself with a pistol and took cover behind a parked truck, that defendant subsequently armed himself with a shotgun, and that Hollis Elzey struck the victim thereby instigating the ensuing violence.
At trial, defendant denied that he had a pistol and denied that Raymond had brought the shotgun to the scene. Defendant maintained that just prior to the shootings Raymond and the victim shook hands. Immediately thereafter, Raymond and Hollis turned to walk away from the victim. The victim then shot Hollis. Based on this scenario, defendant argues that the evidence was insufficient to sustain his conviction.
When reviewing the sufficiency of evidence, it must be determined whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). However, where there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witness, this is a matter of the weight of the evidence, not of sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d at 1101. This Court has no appellate jurisdiction to review questions of fact in appeals in criminal cases. La. Const, of 1974, art. V, § 10(B). A determination of the weight of the evidence rests solely in the sound discretion of the trier of fact and is not reviewable on appeal. Korman, 439 So.2d at 1101.
In the instant case, the facts are in dispute. The jury’s verdict indicates that it chose to believe the evidence presented by the state, rather than that presented by defendant, and concluded, based on the facts as outlined by the state and after consideration of LSA-R.S. 14:18-22, that defendant could not avail himself of the defense of self-defense or defense of another. The evidence is sufficient to prove the offense charged.
We find no merit in any of defendant’s assignments of error.
Accordingly, defendant’s conviction and sentence are affirmed.
AFFIRMED.
COLE, J., concurs.