CUTRER, Judge.
The defendant, Larry Payne, was indicted by a grand jury for second degree murder in violation of LSA-R.S. 14:30.1. On December 21, 1983, a twelve member jury found the defendant guilty as charged. Defendant was sentenced to life imprisonment without the benefit of probation, parole or suspension of sentence. Defendant appeals. We affirm.
FACTS
On August 7, 1983, the defendant, Larry Payne, arrived at the courthouse in Opelou-sas and informed police that he needed help, that he had just shot someone. Defendant directed officers to the scene, at which other police had already arrived. Defendant at first told the officers he had thrown the weapon in a bayou but later he turned the murder weapon in to the officers. The deceased victim, Clarence Randall, was found lying face down in a small dining room to the rear of his home. A .25 caliber semi-automatic pistol was found under his hand.
Raymond Randall, the son of the victim, testified that his father owned a .25 caliber pistol. The weapon found at the scene was not operable. The slide was lodged partially open and no shell was in the barrel. The circumstances indicated that the weapon had not been recently fired. Raymond Randall had been asleep on a sofa in the living room and was awakened by the shots, but did not see the actual incident.
Defendant’s wife, who was visiting Randall, gave eyewitness testimony.[1] She stated that defendant came into the house, pulled a gun from inside his shirt and shot Randall twice, once in the head and once in the chest. She stated that Randall did not have a gun in his hand when he was shot.
The defendant testified that he went to Randall’s house to purchase car parts and that, on arrival, he asked to use his bathroom. He said that Randall followed him to the door of the bathroom, pushed him and fired a shot. Defendant then claims to have drawn his own gun and shot Randall in self-defense.
ASSIGNMENT OF ERROR
After the verdict, defendant moved for acquittal or, alternatively, that his conviction of murder be reduced to manslaughter. His sole assignment of error is that the trial court erred in denying this motion.
In brief, defendant argues that the State failed to prove that he had the specific intent to kill or inflict great bodily harm required by LSA-R.S. 14:30.1. He also argues that the State failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense.
The appellate standard of review for the sufficiency of the evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and has been held to be applicable to cases involving direct or direct and circumstantial evidence. State v. Washington, 421 So.2d 887 (La.1982); State v. Hebert, 444 So.2d 228 (La.App. 1st Cir.1983). The Jackson v. Virginia standard requires that the evidence, when viewed in the light most favor *1153 able to the prosecution, must be sufficient for a rational trier of fact to conclude that the essential elements of the crime were established beyond a reasonable doubt.
Second degree murder is defined in pertinent part by LSA-R.S. 14:30.1 as:
“Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or inflict great bodily harm;
Specific intent is defined by LSA-R.S. 14:10 as:
“Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”
As a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982). Here, the defendant testified that he shot the victim in the head and chest while the victim was standing close enough to push him. From this it can be inferred that the defendant had the specific intent to kill or inflict great bodily harm. State v. Noble, 425 So.2d 734 (La.1983). Thus, the State sufficiently met its burden of proving that defendant had the specific intent to kill or inflict great bodily harm upon Randall.
Defendant also argues that he shot Randall in self-defense. Justifiable homicide is defined by LSA-R.S. 14:20 as:
“A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; .... ”
Thus, a homicide is justifiable as self-defense only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. State v. Guinn, 319 So.2d 407 (La.1975); State v. Brockington, 437 So.2d 994 (La.App. 3rd Cir.1983).
However, the defendant who asserts self-defense does not assume any burden of proof on that issue. The State has the affirmative duty of proving beyond a reasonable doubt that the homicide was not perpetuated in self-defense. State v. Sylvester, 438 So.2d 1277 (La.App. 3rd Cir.1983), aff’d 444 So.2d 606 (La.1984); State v. Brockington, supra; State v. Pittman, 428 So.2d 979 (La.App. 1st Cir.1983), writ den., 433 So.2d 155 (La.1983), U.S. cert. den., _ U.S. _, 104 S.Ct. 122, 78 L.Ed.2d 120 (1983). Thus, the State must show beyond a reasonable doubt that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was necessary to save his life.
On appeal, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Sylvester, supra; State v. Brown, 414 So.2d 726 (La.1982).
The defendant and his wife, Mrs. Jane Payne, had been physically separated since 1979. Despite this informal separation, the couple was on friendly terms and visited each other occasionally. On August 7, 1983, Mrs. Payne was visiting a friend, Clarence Randall, at his house. According to Mrs. Payne, they were not “dating;” they were just friends. Defendant claimed he needed an auto part, so he went to Randall’s house to see if he could buy it from Randall. He knocked on the door and Randall answered it. Mrs. Payne heard the two men talking about auto parts. Randall attempted to latch the door but defendant pushed the door open and came inside the house anyway.
*1154 Mrs. Payne testified that no one was talking as the men walked in. Suddenly, defendant pulled up his shirt, pulled out a .38 caliber pistol, and aimed at Randall’s head. Mrs. Payne yelled, “Larry, don’t do that,” but defendant shot Randall in the head. Randall raised his hands in a defensive manner in front of his face which caused the bullet to go through his left arm and fatally strike his head. Mrs. Payne pleaded with defendant again but he fired another shot into Randall’s chest. She stated that Randall did not have a gun in his hand when he was shot.
After the second shot, Randall whirled around and fell; the shots woke up Randall’s son, Raymond Randall, who was sleeping on the sofa in the front room. He ran into the back room and saw defendant standing over his father. Raymond Randall ran from the house to a neighbor’s house and called the police. Mrs. Payne ran out of the house in fear and later returned to find that the defendant was gone.
The defendant testified that Randall let him in the house for him to use the bathroom. The defendant initially testified that, as he was walking to the bathroom, Randall pushed him from the back and shot at him. Defendant stated that he turned around, pulled his gun from inside his shirt and shot Randall in the head and chest. At another point in his testimony, defendant stated that, as he turned around he saw Randall pull a gun from his pocket. When confronted with this contradiction, defendant reverted to his original story that Randall shot before he turned' around. When he was later asked if Randall shot at him, he answered “I don’t know.” There was no empty shell from the weapon located in the room, nor was there any bullet holes located that may have been made by the automatic. This gun, when examined by the forensic expert, showed that no shell had been shifted into the barrel, thus, it was not in a firing position.
The police testified that the .25 caliber automatic was found near the hand of Randall. We note that, as soon as the shooting ended, Randall’s son and Mrs. Payne left the house, leaving only the defendant and Randall in the room. Defendant, at one point in his testimony, stated that he had seen the gun in Randall’s pocket. Under the circumstances the jury could have concluded that Randall either pulled the automatic after being shot or that it was placed near his hand by the defendant after the shooting took place. The jury, faced with conflicting testimony, obviously accepted the testimony of Mrs. Payne.
In the case of State v. Trosclair, 443 So.2d 1098 (La.1983), the court held:
“The defendant claims, however, that a guilty verdict could not properly be founded upon the testimony of these witnesses as their credibility was destroyed. But it is not our function to assess credibility or reweigh the evidence. Our review for minimal constitutional sufficiency of evidence is a limited one which ends upon our finding that the rational trier-reasonable doubt standard has been satisfied.”
See also, State v. Wright, 410 So.2d 1092 (La.1982); State v. Klar, 400 So.2d 610 (La.1981) and State v. Porter, 454 So.2d 220 (La.App. 3rd Cir.1984). We may not, therefore, find incredible the testimony of a witness, which was obviously found credible by the appropriate factfinder. Thus, the determination of the credibility of Mrs. Payne by the jury will not be disturbed on appeal.
In viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to find that the State proved its case beyond a reasonable doubt.
For the above reasons, the conviction and sentence are affirmed.
AFFIRMED.

. Counsel for the defendant told the court, in oral argument, that he had informed Mrs. Payne that the law gave her the privilege to refuse to testify against her husband. She, however, waived the privilege.