687 So.2d 465 (1996)
STATE of Louisiana,
v.
David Allen MACKEY.
No. CR96-817.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*466 Morgan J. Goudeau, III, Opelousas, David Michael Miller, Asst. Dist. Atty., for the State.
David Randal Wagley, Opelousas, for David Allen Mackey.
David Allen Mackey, pro se.
Before THIBODEAUX, PETERS and GREMILLION, JJ.
PETERS, Judge.
The defendant, David Allen Mackey, was charged by a grand jury with second degree murder, a violation of La.R.S. 14:30.1. A trial by jury began on August 24, 1994, and ended on August 25, 1994, with the jury returning a verdict of guilty as charged. The defendant was subsequently sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, and he has appealed his conviction. In the appeal, the defendant's counsel filed five assignments of error, and the defendant filed two additional pro se assignments of error.

DISCUSSION OF THE RECORD
On the evening of October 21, 1993, the defendant shot Richard Davis, Jr., in Room 12 of the Yambilee Hotel in Opelousas, Louisiana. On November 17, 1993, Davis died in a Fort Worth, Texas hospital as a result of his wound. The two men had traveled from Texas a few days before the incident to perform renovation work at the Yambilee Hotel and had been occupying Room 12 during their stay.
On the evening of the incident, both men had been drinking at the Oaks Lounge in Opelousas. When they returned to their room, the defendant armed himself with a .38 caliber pistol and decided to play Russian roulette. He removed all but one of the bullets from the pistol, pointed it at his own head, and pulled the trigger. The gun failed to discharge. He then turned the pistol on Davis and, although Davis expressed his desire not to participate in the game, pulled the trigger. The pistol discharged, and the bullet struck Davis in the neck, partially severing his spinal cord and lodging in the bone behind the spinal cord. As a result of the injury, Davis was immediately rendered a quadriplegic. On November 17, 1993, all of Davis' life-support systems were disconnected, and he died.

OPINION
The defendant's counsel presented this court with five assignments of error in an effort to set aside the conviction. These assignments are as follows:
1. The Trial Court erred in, under the circumstances, proceeding with the entire adversarial portion of the trial, during the defendant's absence, as such severely prejudiced defense counsels [sic] ability to put on a defense.
2. The Trial Court erred in denying defense counsel's Motion for a MisTrial/Recess [sic] which was requested as a result of the defense receiving extremely important, discoverable, information on the day prior to the taking of evidence in this case.

*467 3. The Trial Court erred in giving a jury instruction on flight in light of the circumstances herein.
4. The Trial Court erred in denying defendant's Motion for Post Verdict Judgment of Acquittal and Alternatively for a New Trial.
5. The verdict is contrary to the law and evidence in that the evidence is insufficient to sustain a verdict of guilty and the evidence, when viewed in a light most favorable to the State, does not reasonably support a finding of guilt.
In a pro se brief, the defendant added the following assignments of error:
6. Whether the trial court erred by permiting [sic] Defendant to be tried and convicted for 2Nd [sic] Degree Murder, by an indictment that was defective, in that said indictment charged Defendant with a crime that was not comitted [sic]; and
7. Whether the trial court erred by permiting [sic] victim's so-called statement to be admitted into evidence in lieu of ascertainning [sic] whether said so-called statement was, in fact, a death bed statement and given without an expert lip reader being present.
For the following reasons, we find no merit in the assignments of error and affirm the defendant's conviction in all respects.

ASSIGNMENT OF ERROR NUMBER ONE
The defendant was not present at 9:00 a.m. on August 24, 1994, when his case was called for trial. His counsel informed the court that he had spoken to the defendant on several occasions on the previous day but that he did not know why the defendant was not present for trial. Preliminary matters were handled by the trial court outside the presence of the jury until 11:15 a.m., at which time the jury was brought into court and the trial began. When the jury returned its verdict at 2:17 p.m. on August 25, 1994, the defendant had yet to make an appearance. After the verdict was returned, the trial court issued a bench warrant for the defendant and forfeited the defendant's bond. The defendant contends the trial should not have been held in his absence.
La.Code Crim.P. art. 831 provides in pertinent part:
A. Except as may be provided by local rules of court in accordance with C.Cr.P. Art. 551, a defendant charged with a felony shall be present:
(1) At arraignment;
(2) When a plea of guilty, not guilty, or not guilty and not guilty by reason of insanity is made;
(3) At the calling, examination, challenging, impanelling, and swearing of the jury, and at any subsequent proceedings for the discharge of the jury or of a juror;
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence;
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced; and
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.
The record reveals that the jury was actually selected, empaneled, and sworn on August 1, 1994, and the defendant was present at that time. The jurors were then excused and ordered to return on August 24, 1994. On August 24, 1994, one of the jurors was replaced by an alternate without the presence of the defendant and in apparent violation of La.Code Crim.P. art. 831(A)(3). However, La.Code Crim.P. art. 832(A) provides in pertinent part that "[a] defendant charged with a felony not punishable by death cannot object to his temporary voluntary absence at the proceedings listed in Article 831 if his counsel was present." See also State v. Tate, 95-1152 (La.App. 3 Cir. 3/6/96); 670 So.2d 671. The defendant's counsel was present.
The record reveals that the defendant had a history of failing to appear in this case. He failed to appear for arraignment on December 3, 1993, January 25, 1994, and February 4, 1994. Additionally, he failed to appear for a prior jury selection on April 5, 1994. The defendant's counsel admits in brief that the defendant chose not to appear on August 24 and 25, 1994. By not appearing, the defendant believed that the trial court would be forced to upset the trial and give his counsel *468 more time to address certain newly discovered evidence.
We find no error in the trial court's decision to proceed in the defendant's absence. Not only was the defendant's absence voluntary, but the defendant has failed to allege how his defense was prejudiced by his absence. He purposely chose to absent himself in an effort to circumvent the orderly administration of justice, and, under those circumstances, the trial court was correct in proceeding to trial.

ASSIGNMENT OF ERROR NUMBER TWO
In this assignment, the defendant contends that the trial court erred in not granting his motion for a mistrial or a recess because of newly discovered evidence beneficial to his defense. The exculpatory evidence the defendant refers to has to do with the fact that Davis chose to have his life-support systems terminated on November 17, 1993, rather than to wait for his eventual death. This information was provided to the defendant by the state the day before trial, and he argues that there was a reasonable probability that the trial result would have been different had the evidence been disclosed previously, as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 10 L.Ed.2d 215 (1963). The state contends that the evidence was not exculpatory and therefore not discoverable, that the defendant was able to use the information during trial, and that the defendant has failed to establish that the information was deliberately withheld by the state.
It has long been the law of this state that if a defendant "hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient." State v. Wilson, 114 La. 398, 38 So. 397, 398 (1905). The test is whether the defendant's conduct was a substantial factor in bringing about the death of the victim. See State v. Durio, 371 So.2d 1158 (La.1979). Dr. Marc Andrew Krouse, a pathologist and the Deputy Chief Medical Examiner of the District Medical Examiner's Office in Fort Worth, Texas, performed an autopsy on Davis' body the day after his death and concluded that the cause of death was a bullet that struck the front of the neck, partially severing the spinal cord and lodging in the bone behind the spinal cord. The bullet he removed from the body was later established as having been fired from the defendant's .38 caliber pistol. According to Dr. Krouse, Davis' lungs had already begun to develop pneumonia, and had Davis not chosen to be removed from life-support systems, he would have survived for a few weeks at best. Even Dr. Thomas A. Castille, the general surgeon who attended Davis immediately after the incident at the Opelousas General Hospital, expressed the prognosis in this case as "dismal." He was of the opinion that Davis' injury should have been fatal at the scene.
All of the expert testimony at trial was to the effect that Davis died as a result of the gunshot wound inflicted by the defendant. His removal from life-support systems only hastened the inevitable. For that reason, we do not find that the evidence in question was exculpatory. Additionally, the defendant's counsel was able to use this information at trial and has not shown how he was prejudiced by the late disclosure of this information or what defense would have been developed had he been given a longer time to examine the new information. Also, the defendant failed to show that the state deliberately withheld the information. See State v. Linkletter, 345 So.2d 452 (La.1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760 (1978). We therefore find that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends that the trial court erred in giving a jury instruction on flight in light of the evidence presented. The jury instruction complained of is as follows:
If you find that the defendant fled after he had been accused of the crime, the flight alone is not sufficient to prove a defendant is guilty; however, the flight may be considered along with all the other evidence. You must decide whether such flight was due to consciousness of guilt of the particular crime or for other reasons unrelated to guilt of the particular case, in the particular case.
The defendant's counsel did not object to the instruction at the time it was given. An *469 irregularity or error at trial cannot be availed of after a verdict is rendered unless the objecting party makes known his objection at the time of the occurrence. La.Code Crim.P. art. 841(A); State v. Holmes, 620 So.2d 436 (La.App. 3 Cir.), writ denied, 626 So.2d 1166 (La.1993). While there are some recognized exceptions to this contemporaneous objection rule, none are present in this case. Therefore, we find that this assignment of error should not be considered.

ASSIGNMENT OF ERROR NUMBER FOUR
In arguing that the trial court erred in denying his motions for post verdict judgment of acquittal or, alternatively, for a new trial, the defendant adopts the arguments presented in Assignments of Error Numbers One, Two, Three, and Five. For the reasons previously set forth and for the reasons denying the fifth assignment, we find that this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
By this assignment of error, the defendant contends that the verdict is contrary to the law and evidence in that the evidence is insufficient to sustain a verdict of guilty when viewed in a light most favorable to the state.
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
La.R.S. 14:30.1 provides in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm....
Specific intent is defined by La.R.S. 14:10(1) as follows:
Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
Specific criminal intent need not be proven as fact but may be inferred from the circumstances of the case and the actions of the defendant. State v. Freeman, 94-1132 (La. App. 3 Cir. 4/5/95); 653 So.2d 801, writ denied, 95-1156 (La.10/6/95); 661 So.2d 464. When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. Graffagnino, 436 So.2d 559.
Only the defendant and Davis were present when the shooting occurred. However, immediately before the defendant discharged the pistol, Davis had been talking on the telephone to Jessica Landry, a female friend in Texas. Ms. Landry testified that she dated Davis and was on the telephone with him the night he was shot. During the telephone conversation, she heard Davis say, "No, David, put down the gun" and "Quit it."
Virginia Erlengson, the nursing supervisor at Opelousas General Hospital, testified she was on duty the night Davis was brought in. Although Davis had trouble speaking, he could communicate and was able to explain how he was shot by the defendant. Ms. Erlengson stated that Davis did not want to participate in playing Russian roulette. As the defendant and Davis fought over the gun, it discharged, and the bullet struck him. A report prepared by Officers Loretta Etienne and Michael Soileau of the Opelousas Police Department was admitted into evidence. This report corroborated Davis' version of events as related to Ms. Erlengson.
A tape recording of the defendant's confession was played to the jury. The defendant admitted that it was his fault and that the victim did not touch the gun. Additionally, *470 Christopher Henderson, a forensic chemist with the Acadiana Crime Laboratory, testified that the pistol used to shoot Davis did not have a hair trigger.
We find that the evidence presented at trial established that the defendant actively desired the criminal consequences to follow his actions and therefore was sufficient to prove the defendant had the specific intent to kill or inflict great bodily harm, despite defendant's contention that this was an accident and that he did not have the requisite intent. See State v. Jack, 596 So.2d 323 (La.App. 3 Cir.), writ denied, 600 So.2d 611 (La.1992) (holding that aiming a firearm directly at a victim indicates intent to kill or inflict great bodily harm); State v. Payne, 461 So.2d 1151 (La.App. 3 Cir.1984), writ denied, 464 So.2d 314 (La.1985) (holding that the defendant's testimony that he shot the victim in the head and chest at close range was sufficient to infer that the defendant had the specific intent to kill or inflict great bodily harm).
We find that the evidence, when viewed in a light most favorable to the prosecution, was sufficient for any rational trier of fact to find the defendant guilty as charged, beyond a reasonable doubt. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
This is a pro se assignment in which the defendant contends that the indictment was defective in that it charged him with a crime that was not committed. Basically he argues that the cause of death was Davis' request to be removed from the life-support systems and that it was the lack of "oxygen" that was the "authentic" cause of death.
This argument was addressed in the second assignment, and for the reasons found therein, we find that this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
This assignment of error is also a pro se assignment. The defendant contends that the trial court erred in permitting Davis' statement into evidence without ascertaining whether the statement was a death-bed statement and without the use of an expert lip reader being present at the time the statement was made.
Ms. Erlengson testified that although Davis had trouble speaking, he could communicate by whispering and was able to explain how he was shot by the defendant. Officers Etienne and Soileau were also present and testified that Davis was able to communicate in a low whisper or by use of an alphabet board. The trial court admitted Davis' statement to Ms. Erlengson as a dying declaration. In doing so, the trial court noted that Davis had asked for a priest prior to giving the statement to the authorities, thereby indicating his belief that death was inevitable. Ms. Erlengson testified that Davis knew his situation was dismal.
The report prepared by Officers Etienne and Soileau was admitted into evidence without objection. The contents of this report were identical to the statement made to Ms. Erlengson concerning the incident.
Although no expert lip reader was present, it is clear from the testimony that Davis was able to communicate, and thus we find this assignment without merit.

DISPOSITION
The defendant's conviction and sentence are affirmed in all respects.
AFFIRMED.